Richards *v.* Phila. Rapid Transit Co., Appellant.

Argued December 2, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Charles J. Biddle,* with him *John J. K. Caskie,* for appellant.—Plaintiff was engaged in a common purpose with the driver of the automobile and was guilty of contributory negligence as a matter of law: Quinn v. Transit Co., 292 Pa. 489; Hill v. Transit Co., 271 Pa. 232; Dunlap v. Transit Co., 248 Pa. 130; Otis v. Kolsky 94 Pa. Superior Ct. 548; Kelly v. Agricultural Society, 286 Pa. 97; Nutt v. R. R., 281 Pa. 372; Hilton v. Blose, 297 Pa. 458.

There was no evidence of negligence on part of defendant: Wolf v. Transit Co., 252 Pa. 448; Walker v. Transit Co., 274 Pa. 121; Schuchalter v. Transit Co., 288 Pa. 189; Moss v. Traction Co., 180 Pa. 389; Eastburn v. Express Co., 225 Pa. 33; Jerdon v. Transit Co., 260 Pa. 275.

*Robert T. McCracken,* with him *Henry P. Erdman,* for appellee.—The motorman of appellant's car was negligent: Reitmier v. Transit Co., 94 Pa. Superior Ct. 509; Caplan v. Transit Co., 92 Pa. Superior Ct. 251; Cohen v. Transit Co., 87 Pa. Superior Ct. 273.

The driver of the car in which appellee was riding was not contributorily negligent: Becker v. Transit Co., 81 Pa. Superior Ct. 33.

Appellee and Perry were not engaged in a common purpose: Alperdt v. Paige, 292 Pa. 1; Schlossstein v. Bernstein, 293 Pa. 245; Hilton v. Blose, 297 Pa. 458.

Appellee was not guilty of contributory negligence: Kilpatrick v. Transit Co., 290 Pa. 288; Davis v. Ice Co., 285 Pa. 177.

OPINION BY MR. JUSTICE FRAZER, January 13, 1930:

Plaintiff was injured when a Ford automobile, in which he and the driver were occupants, was struck by defendant company's trolley car at the intersection of 52d Street and Girard Avenue in the city of Philadelphia, during daylight. The automobile was owned and driven at the time of the accident by George Perry, both men being on their way to Jenkintown, where they were employed by a building contractor as carpenters. Plaintiff sued to recover for the injuries received and the verdict was in his favor for $9,750. On motion for a new trial, the court ordered a reduction of the amount to $6,000. The present appeal is from refusal of the court below to enter judgment for defendant non obstante veredicto. No question as to the amount of the verdict as reduced is raised.

The few facts not in dispute are to the effect that plaintiff, by invitation, entered Perry's Ford car at 52d and Market Streets, which Perry was driving and continued to drive until the moment of the accident, to proceed together to the place of their respective employment at Jenkintown. They drove northward on 52d Street, and when nearing Girard Avenue, which intersects the other thoroughfare, were closely following one of defendant's trolley cars, also traveling north on 52d Street, the automobile being in the cartway to the right of the railway tracks. Reaching Girard Avenue, the trolley stopped to discharge and receive passengers, and Perry's automobile being three or four feet behind the car, but still in the cartway, stopped also. From this point all material facts are in controversy, except that the auto-

mobile was struck by one of defendant's trolley cars going eastward on Girard Avenue, as it crossed the intersecting 52d Street tracks on that avenue.

Each party presents an entirely different account of the cause of the accident. The version of plaintiff and his witnesses is that when the 52d Street trolley, after having stopped at Girard Avenue, started forward, the automobile, which had also come to a standstill, again proceeded, following the car about three feet in its rear, but continuing on the roadway to the right; that the street car crossed the intersecting Girard Avenue tracks, with the Ford car close behind, and that, at the time the Ford had reached and was upon the intersecting rails, a car of defendant company traveling on these rails eastwardly, as alleged in plaintiff's statement of claim, at a high speed and without giving warning or signal, struck Perry's automobile, overturning it and throwing out the two occupants and seriously injuring plaintiff.

According to the entirely divergent version of defendant, when the Ford car reached Girard Avenue, it suddenly drove out from behind the 52d Street trolley, reached the tracks in front of the trolley traveling on Girard Avenue eastward and was struck by that car before the motorman had time to apply the brakes or otherwise avoid a collision.

It is plainly manifest that both these widely conflicting versions cannot be supported by any similar range of facts; and they are so obviously and emphatically different as stated by both parties and so clearly in opposition, that the record, as we read it, inevitably compels the conclusion that one of the two accounts is untrue. This question is purely one of fact, and was for the jury to determine. The duty of the jury was to weigh the evidence carefully and to find for the party in whose favor the evidence preponderates, although it be not free from reasonable doubt: 3 Greenleaf on Evidence 38. We may, we think safely assume the jury, guided only by their plain common sense, would have

found against plaintiff if they believed the version of the cause of the accident as presented by defendant. Since the conclusion reached by the jury depends upon the evidence alone, we must give full effect to all the facts and inferences therefrom, which the jury might have found in favor of plaintiff and reject all those which it might have refused to believe: Biesecker v. Penna. R. R. Co., 276 Pa. 87. Guiding our examination of the record in this light, we are satisfied that the evidence does not support, with sufficient certitude, the contention of defendant. While we do not of course pass upon the weight of the evidence or the credibility of the witnesses, matters which were solely for the jury, we may assume, from the nature of the verdict, that they detected and considered the conspicuous air of uncertainty, confusion and lack of conviction of much of the material testimony of defendant. Its three witnesses, the motorman and two of his passengers, had an unobstructed view of the avenue, yet only one of them saw the automobile drive out from behind the trolley car. The motorman himself said he did not see the Ford until "it got right in front of me." Yet he also testified that the automobile "sort of went on Girard Avenue and then come back to the left side of my car and the left side of my car pushed against his in the center of the Ford on the fender." Manifestly, if he saw the Ford maneuvering to such extent, it was doing so before he saw it "right in front." Later he made the vague qualification: "Well, of course, I might have seen it just an instant before." The vagueness of his testimony was further emphasized when, on cross-examination, he again tried to explain when he first saw the Ford: "It looked like—yes, I seen the front of the car, and it looked like he was coming towards me, towards my car." Nor was he sure as to what part of Girard Avenue his car was on when, as he claimed, it hit the automobile. Asked whether he had crossed the 52d Street tracks on Girard Avenue, he replied: "Well, I guess I was."

Another important factor in the case was whether or not the 52d Street car was moving at the time the accident happened. Plaintiff and all his witnesses testified that the car was in motion, that it had crossed the tracks running east and west on Girard Avenue with the Ford close behind, but on the cartway, and that the automobile was struck by the trolley car, coming along Girard Avenue, with the intention of passing to the rear of the 52d Street car. Yet, although nothing obstructed their view of this large street car, none of defendant's witnesses could say whether it had or had not started. All the motorman could say was: "It started but mighty slow; I couldn't say it did [start"]. On the other hand, plaintiff and the driver of the Ford car and two other witnesses, certainly disinterested as far as the record shows, declared positively that the 52d Street car was in motion with the Ford close behind, that the trolley crossed the eastbound track, the Ford still in its rear, and that when the automobile reached that track, it was struck by the on-coming eastbound trolley, which plaintiff and Perry testify they did not see before the contact. Clearly there is a lack of adjustment and connection in the story told by defendant's witnesses and it is to be assumed that the jury, faced with this uncertainty on the one hand and the positive evidence on the other, gave the preponderant probative value to the testimony of plaintiff.

Moreover, there is no evidence tending to show which of the two trolley cars had the right of way at the time, to cross Girard Avenue. The witness who saw the accident from his milk wagon, about 60 feet from the avenue, testified: "The 52d Street car came over right ahead of No. 10 [the trolley which struck the automobile] just as it started up. If they had started up at the same time it would have hit the 52d Street car instead of the automobile." This clear and positive testimony, showing as the evidence of all other witnesses of plaintiff shows, that the colliding trolley car was attempting to cross

Girard Avenue immediately in the rear of the 52d Street car, is opposed by the general declarations of defendant that the colliding trolley had passed in front of the 52d Street car and then hit the Ford car after it had dashed ahead of the latter trolley. In fact the direct and convincing character of the evidence for plaintiff is everywhere in notable contrast with the hesitant, confused and faltering testimony of defendant's witnesses. Describing the accident, a witness for plaintiff, Terpenny, who, with a companion, had followed Perry's car from where it started at Market and 52d Streets, and was about a block behind, when the collision occurred, testified: "We were following after them, and I had watched their car coming down 52d Street. Now I can't tell you just how far back down 52d Street we were. We were coming down 52d Street and I saw this trolley car stop and I saw Mr. Perry stop. I saw the yellow car start and I saw the Ford start and the next thing I saw was a cloud of dust and that green car [the colliding car] was looming right out of a clear sky, I don't know where it came from, and just came and swept him off from the back of the yellow car." A witness, Turnbaugh, who saw the accident while on his milk wagon on 52d Street, said he saw the 52d Street car stop at the avenue to discharge passengers, "and there was an automobile behind it"; that the car then started to cross the avenue with the Ford behind it and that it was in that position when the eastbound car hit it. It was for the jury to decide as to the truth or falsity of the conflicting testimony and to say on which side the truth most surely predominated; we cannot reject that ultimate decision in the face of the plain and positive evidence of plaintiff, as opposed to the unconvincing testimony of defendant. Assuming, then that the collision happened as claimed by plaintiff, there was much evidence tending to prove that defendant's motorman, without due watchfulness for traffic conditions, struck Perry's automobile as it was following a few feet behind the northbound trolley.

There was also direct evidence of negligence on the part of the motorman. The witness who was on his milk wagon at the moment of the collision, testified he saw the colliding trolley start to cross Girard Avenue and that at the time of the accident the motorman was standing sideways in the car collecting fares; his car was what is known as a "one man car." On cross-examination, he said: "He had his back to me standing sideways in the car, driving the car with one hand and reaching out this way with the other hand. He wasn't standing like a motorman who is running the car, facing forward. He was standing sideways on the platform." This testimony was denied by the motorman and one of his passengers.

The evidence establishes freedom from contributory negligence on the part of Perry, the driver of the automobile. That question was carefully submitted to the jury by the learned trial judge and the verdict indicates that they found no negligence.

The immediate question, then, is as to whether plaintiff, who was accompanying Perry in the latter's car to the place where they were employed, was guilty of contributory negligence. In his charge to the jury the trial judge was most careful in his instructions on this phase of the case, and, as we have seen, the jury by its verdict exonerated plaintiff. To have found otherwise, it would have to be established by convincing evidence that plaintiff saw a danger and made no effort to avert it or to warn the driver of existing imminent peril, which he disregarded or that he joined the driver in testing a manifest danger: Hardie v. Barrett, 257 Pa. 42. None of these requirements arose in the present case. Plaintiff, seated at the right hand of the driver, looked from his side of the car to see if the tracks were clear, "was watching the traffic," as he expressed it. He saw no car, or indications of danger. The driver Perry, testified that he looked from both sides of his car, and neither saw nor heard a car approaching. They were hit on the

opposite side from plaintiff. We cannot imagine what more plaintiff could have done. He was not driving; he looked for indications of danger; there was nothing to warn either him or the driver of impending danger. The latter made observations and saw no peril. He was consequently testing none, and, of course, neither was the plaintiff. We said in Davis v. American Ice Co., 285 Pa. 177, 185: "We know of no decision where it has been held that a passenger in an automobile is equally bound with the driver, as was in effect held by the court below, to watch for the approach of vehicular traffic at street crossings. To so hold would require such constant interference with the driver as to increase rather than diminish the danger." In the case here, Perry's car followed the 52d Street trolley, stopping when it stopped and starting immediately when it started. Both men said they looked and saw no other street car on Girard Avenue. With no probable or manifest danger in sight, they went on, and defendant's motorman, without paying attention to the traffic that might be and was following the 52d Street car, ran his trolley, as the court below found, so close to the rear of the 52d Street car that he struck the side of the automobile when it was but three feet to the rear of the trolley. It was not a situation where they were "taking a chance," or testing a danger. Traveling on the street to the right and behind the trolley car, they saw no street car which they might try "to beat" across the tracks. All material questions as to contributory negligence were carefully and properly placed before the jury for their consideration as issues of fact. Their finding was conclusive against defendant.

Under the state of facts testified to by plaintiff and his witnesses, that they were driving only three or four feet behind and to the right of the 52d Street car, and were struck by the Girard Avenue car while in that position, both the 52d Street car and the automobile being in the act of crossing Girard Avenue, it could not

be declared as a matter of law that either plaintiff or the driver of the automobile was guilty of contributory negligence in not anticipating that the Girard Avenue car would suddenly move forward at the time the 52d Street car had scarcely cleared the intersection, and strike them any more than that it would run into the other car.

Judgment affirmed.