Ellis *v.* Greenbaum Sons Investment Co.,
Appellant.

Argued December 3, 1931. Before WALLING, SIMP-
SON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*D. Arthur Magaziner,* with him *Clinton O. Mayer,* for
appellant.—The alleged agreement to repurchase was
not binding on defendant corporation: Kelly v. Bank &

Trust Co., 299 Pa. 236; Dougherty v. Binenstock, 293 Pa. 566; Long v. C. & N. Co., 292 Pa. 164; Lehan v. Trust Co., 303 Pa. 357.

The alleged agreement is within the statute of frauds: Peoples Bank v. Kurtz, 99 Pa. 344; Magen v. Neiman, 301 Pa. 164; Brownfield v. Brownfield, 151 Pa. 565.

It is submitted that an oral agreement for the repurchase of goods comes within the statute of frauds, and the alleged contract cannot be enforced.

Prior to the Sales Act the general rule in England and the United States was that the seller had no right of action for the contract price unless the property had passed. As the seller is still the owner he should not be given the price. His damage is the difference between the value of the goods and the contract price. In the case at bar there was no testimony as to the market value of the goods at the time of the alleged breach. To permit the seller to sue for the price is anomolous, because it is tantamount to an action for specific performance without the aid of a court of equity: Unexcelled Fire W. Co. v. Polites, 130 Pa. 536; Jones v. English & Sons, 168 Pa. 493; Puritan Coke Co. v. Clark, 204 Pa. 556; Peoples Bank v. Kurtz, 99 Pa. 344; Wheeling R. R. v. Gourley, 99 Pa. 171; Broadhead v. Reinbold, 200 Pa. 618; Polsgrove's Case, 5 Pa. 500; Kehres v. Struempfle, 288 Pa. 534; Nat. Bank v. Block Co., 233 Pa. 421; Harris v. Blitzstein, 84 Pa. Superior Ct. 498.

*Ralph B. Evans,* with him *Richardson Dilworth,* for appellee.—Loeb's contract of employment was verbal; the extent of his authority was therefore a question for the jury: Singer Mfg. Co. v. Christian, 211 Pa. 534, 540; Richards v. Transit Co., 299 Pa. 163.

It is entirely clear that Loeb not only had the authority, but was, in fact, instructed to sell bonds on the representation that the company would buy them back at any time at a discount of one point, regardless of general market conditions: Armstrong v. Orler, 220 Mass. 112.

Appellant complains that there is a variance between the pleadings and the proof. Certainly there is no different cause of action, but merely a diminution of the damages by reason of something occurring after suit brought: Kennedy v. Rothrock, 261 Pa. 580.

OPINION BY MR. JUSTICE KEPHART, January 11, 1932:

Appellee purchased bonds from appellant's agent and brought this action to recover the loss sustained by reason of appellant's refusal to perform its part of the agent's oral agreement to repurchase the bonds. A recovery was had in the court below and this appeal followed.

The principal question for our determination is whether there is sufficient evidence from which the jury could find that the agent had express or implied authority to stipulate for the repurchase of the bonds at the time he sold them. The jury found from the evidence that such authority existed, and in considering the matter before us we must give full effect to all the facts and favorable inferences therefrom which might have been drawn by the jury to show such authority, and reject such facts and inferences which it might have refused to believe: Richards v. P. R. T., 299 Pa. 163.

The evidence shows there was implied authority for the agent to make the agreement to repurchase. While there is no direct testimony to show sufficient authority to repurchase the bonds, such evidence is not necessary to establish authority, if, from the attending facts and circumstances, authority may be implied either from the fact that the principal has held the agent out as possessing the necessary power, or because such authority is necessary to the transaction of the business of the principal.

Appellant, engaged in the business of selling real estate mortgage bonds, maintained an office in Philadelphia, with Herbert B. Loeb in charge as resident vice-president. Loeb requested appellee to purchase appel-

lant's bonds, and, in the negotiations, he orally agreed that appellant would, at any time before maturity, repurchase the bonds at a discount of one point. Relying on this agreement appellee purchased the bonds. Appellant in furtherance of the sale of its bonds put out a pamphlet entitled "Investors' Guide to Safeguard Bonds." This pamphlet contained a paragraph subtitled "Repurchase." It stated: "Patrons desiring to sell their bonds are invited to offer them to us; while we do not guarantee to do so at all times, under ordinary circumstances we will repurchase bonds as a matter of accommodation to a customer who needs the cash...... It is our policy to repurchase our bonds according to the market, less a small handling charge of 1%, which charge is made for reselling the bonds."

Greenbaum, vice-president and secretary of the company, testified that Loeb was in full charge of the Philadelphia office, with no superior over him. He emphasized the fact that it was the policy of their house to repurchase bonds, and that Loeb was permitted to buy bonds in accordance with the policy of the company. The pamphlet further states that, "under ordinary circumstances, if need should arise, your bonds can be converted in cash." It also emphasized the financial responsibility of appellant, and indicated that this financial responsibility added to the security of the bonds, in that they would be repurchased on such agreement as made in the immediate transaction. Appellant company was the only market for the bonds. It is very evident from the pamphlet and the testimony of the company's officer, that Loeb had specific authority, under ordinary circumstances, to agree to repurchase bonds as a matter of accommodation to a customer, and, while his company did not at all times guarantee that they would do this, under ordinary circumstances they would repurchase.

Having specific authority to repurchase under ordinary circumstances, it is also clear, from the testimony

of Greenbaum and Loeb, that it was for the agent to determine, when the bonds were sold, the circumstances in the future under which bonds would be repurchased. This he settled by his oral contract when he sold the bonds to the appellee; he then stated they would be repurchased whenever appellee needed cash. The agent's determination of the existence of "ordinary circumstances" was under all the circumstances within his authority and was binding on his principal. He could then well afford to do this for at that time bonds were attractive securities, and the market was steadily rising, and continued to do so for some time after the purchase. Moreover, as further evidence of this power in Loeb, it was shown that he did repurchase some of these bonds under this agreement, and his acts were approved by his principal.

It is contended that the oral agreement to repurchase the bonds is within section 4 of the Sales Act of 1915, P. L. 543, statute of frauds, and should have been in writing. The stipulation for repurchase was made at the time the bonds were sold; it was part of the consideration of the original sale. The statute of frauds was complied with by the delivery of the bonds to the appellee under the original agreement, and the entire transaction, including the agreement to repurchase, thereby rendered valid and binding. Williston on Sales, section 73, page 131, states that if the seller of goods agrees as part of the original bargain to take them back if desired, the agreement to repurchase becomes enforceable by acceptance and receipt of the goods, or by payment for them by the buyer. See Armstrong v. Orler, 220 Mass. 112.

Appellee brought suit for the repurchase price. By the time the case came up for trial, he was unable to deliver some of the bonds because they had been sold, after notice to appellant, for a sum much less than the repurchase price set by appellant; and credit for the price received was given by the jury on the claim as filed. Ap-

pellant claims it was entitled to all the bonds, the repurchase price of which was sued for, and as appellee was unable to perform this contract on its part, there should be no recovery under the Sales Act.

Appellee's rights are fixed by section 63, article III, of the Sales Act, which provides that if the goods cannot be readily resold for a reasonable price, the seller may offer to deliver the goods to the buyer, and if the buyer refuses to receive them may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer, and may thereafter treat the goods as the buyer's and may maintain an action for the price. Section 54 of the Sales Act provides that an unpaid seller of goods who is in possession of them is entitled to retain possession until payment or tender of the price, and that he may exercise his right of lien notwithstanding that he is in possession of the goods as agent or bailee for the buyer. While appellee held the bonds, as he was entitled to do, he retained his lien on them; this even after he had obtained judgment for the purchase price [see section 56]. But he is not required to hold the goods indefinitely; if the buyer has been in default an unreasonable time, and if he has an opportunity to sell, he may do so under section 60, and credit the proceeds of such sale against any loss that may have been occasioned by the breach of the contract of sale. The appellee, under such circumstances, had the right to sell any of the property in his hands and on which he had a lien without releasing the company from liability for breach of contract. Where part of the goods are sold as here, the measure of damages is the difference between the repurchase price and the price realized from sale. There is no allegation that the bonds could have brought a better price. Appellant's contention that the latter part of section 63 of the Sales Act should apply is groundless for the reason that it is applicable only where "The price is payable on a date certain, irrespective of delivery or of transfer of title." This is not our case. On the other

hand, sections 56 and 60 of the above act cover it, and provide for the retention of the seller's lien and his right of sale elsewhere. Greenbaum Company was the only market for these bonds, and after the tender and refusal under the contract to repurchase, appellee was entitled to maintain his action for the purchase price.

Appellant further claims, since the cause of action set forth the whole loss and was not amended after part of the bonds were sold, there was such a variance between the allegata and probata that appellee should not be permitted to recover. The variance between the allegation and proof was technical, and did appellant no real harm. It had full notice of the sale, and could have bought in the bonds had it so desired. It was stated in Tarentum Lumber Co. v. Marvin, 61 Pa. Superior Ct. 294, 297, "Though the allegata and probata may not entirely agree, if the defendant is not misled and the variance could in no manner affect the trial on its merits, or set up a different cause of action, or impose any different burden on the defendant, the variance would not be considered material." This disposes of the various assignments of merit in the case.

Judgment affirmed.