Hess et al. *v.* Mumma et al., Appellants.

Argued March 16, 1939.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*G. T. Hambright,* with him *Isaac R. Herr,* for appellants.

*Chas. W. Eaby,* for appellee.

OPINION BY RHODES, J., June 27, 1939:

This is an appeal by defendants in an action of trespass, which arose out of a collision between an automobile owned and operated by minor plaintiff, hereinafter termed plaintiff, and a truck operated by Martin R. Mumma, one of the defendants. The jury rendered a verdict for plaintiff. Defendants' motion for new trial was refused, and from the judgment entered on the verdict defendants have appealed. Their only complaint is to the charge of the court, and this is before us on a general exception.

At the trial it was plaintiff's contention that he had the right of way because he was approaching from defendant operator's right, and that defendants were negligent in failing to yield the right of way to him. The defense was that plaintiff had forfeited his technical right of way because defendant operator of the truck had entered the intersection first, and that plaintiff was traveling at an excessive rate of speed.

Defendants' contention on this appeal is that the charge of the court was so prejudicial and inadequate as to require a new trial, although defendants took only a general exception thereto. See *Patterson v. Pittsburgh Railways Co.,* 322 Pa. 125, 128, 185 A. 283; *DeSena v. American Reduction Co.,* 88 Pa. Superior Ct. 199.

A brief summary of the testimony is essential for a

complete understanding of defendants' position, in which we are of the opinion there is such merit as to necessitate the granting of a new trial.

The accident occurred at the right angle intersection of Fruitville Pike and Keller Avenue in Manheim Township, Lancaster County. The former runs north and south, and the latter east and west.

Plaintiff testified that he was proceeding south on Fruitville Pike at not more than 25 miles per hour, and that his view to the left was unobstructed; that when he was about 25 feet north of the intersection he first saw defendants' truck, which was then 40 feet east of the intersection, proceeding west at 35 miles per hour; that "[he (plaintiff)] was in the intersection first, on [his] side"; that he applied his brakes, but the operator of defendants' truck did nothing, and the front of plaintiff's automobile struck the right side of the defendants' truck back of the cab; that the rear wheel of defendants' truck went up and over the radiator of plaintiff's automobile, after which the truck traveled 50 or 60 feet beyond the intersection and stopped; that each vehicle had been driving on its proper side of the respective highways. He testified further that defendants' truck was about one-quarter way across the intersection when his automobile struck the truck, and the collision occurred in the northwest quadrant of the intersection; that the reason he struck defendants' truck was that he (plaintiff) had the right of way, meaning that he was approaching the intersection from the right of defendant operator. Plaintiff also produced a disinterested witness who corroborated his version of the accident in some respects.

Martin R. Mumma, defendant operator, testified that before reaching Fruitville Pike he had slowed to 10 miles per hour in order to make two turns, the latter of which was about 200 feet from the intersection, and that he was traveling at nearly the same speed there-

after; that there is a white line indicating the center of Fruitville Pike. In his own words he testified that "when [he] approached the Fruitville Pike, [he] looked to the right, practically two hundred feet, and [he] didn't see anything; and, as [he] was crossing the Fruitville Pike, [he] glanced to the left, to make sure there was nothing coming from the left, down over the bridge that comes out from Lancaster. As [he] was practically three-quarters across, [he] glanced to the right, and saw this car thirty feet to the right of [him]. To avoid a collision, [he] naturally tried to get away." He further testified that when his truck was almost three-quarters of the way across Fruitville Pike, the front end was beyond the west side of it, and the rear wheels were at the white line when it was struck; that his truck was 20 feet long, 5 feet of the body extending beyond the rear wheels; that the point where it was struck was 8 feet from the rear end; that when he saw plaintiff 30 feet from the intersection plaintiff was traveling at about 50 miles per hour, and the force of the impact raised the right wheels of his truck 1½ feet off the ground; that he traveled 20 feet before they touched the ground and he was "straightened out" and stopped; that plaintiff's automobile made skid marks 30 feet long.

Both of the highways in question had a macadam surface, but there was a discrepancy in the width as testified to by minor plaintiff and defendant operator. The former said that the traveled portion of Fruitville Pike was 16 feet wide, and that Keller Avenue was about the same width. Mumma testified that Fruitville Pike was 30 feet wide, and Keller Avenue about 40 feet wide, nearly all of which was macadam. Defendants produced three disinterested witnesses, one of whom did not see the actual collision. The two other disinterested witnesses corroborated Mumma as to the location of his truck at the time it was struck and the

point on the side of the truck with which plaintiff's automobile collided.

The greater portion of the charge of the trial judge consisted of a résumé of the testimony. Concerning the law applicable to the questions involved, the trial judge stated:

"This is an action to recover damages alleged to be due to the plaintiff for the alleged negligence of the defendants. Negligence is the failure to do what an ordinarily prudent person would do under the circumstances, or the doing of something which a prudent and reasonable man would not do. When injury occurs from the failure to perform a statutory duty, the man who does not perform the statutory duty is negligent.

"I may refer to the term 'contributory negligence.' Contributory negligence is the negligence of a plaintiff contributing with the defendant's own negligence as a cause to the plaintiff's own injury. A man who is contributorily negligent cannot recover damages from a man who likewise is negligent. Therefore, if both parties here were negligent, your verdict would be for the defendants. If the plaintiff was negligent, your verdict would be for the defendants. If the plaintiff was free from negligence and the defendants' negligence was the proximate cause of the accident, then your verdict would be for the plaintiff for such damages as you may find he is entitled to.

"This accident unquestionably happened at an intersection. The stop-sign question does not enter into it. There were no stop-signs there. The law says that, 'when two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right.' The appellate courts have said that it is the duty of a vehicle driver approaching a street intersection to continue to look as he advances into the intersection, particularly the man on the left, who must

continue to look to see people coming from his right and having the right-of-way. . . . . . .

"Now, your first inquiry will be to pass upon the question of negligence. If the plaintiff was negligent, he could not recover; that is, if he was contributorily negligent, he could not recover. If both were negligent, then the verdict would be for the defendants. If the plaintiff was free from negligence, and the defendant driver was negligent, then you would find in favor of the plaintiff. You will first pass upon the question of negligence, before you come to a consideration of the question of damages. . . . . . .

"If you find that the plaintiff was free from contributory negligence and that the defendants' negligence was the proximate cause of the accident or of this collision, then you could give the plaintiff a verdict for such damages as you believe the plaintiff has suffered. . . . . . .

"The Court: Have you anything further, Gentleman?

"Mr. Hambright: I understood Your Honor to read, at the beginning of Your Honor's charge, from a certain section of the Act of Assembly (the Vehicle Code) relating to the right-of-way. I would respectfully ask Your Honor to charge the jury as to the exceptions to that rule.

"The Court: Members of the Jury, the Act of Assembly also provides that 'the driver of any vehicle . . . . . . traveling at an unlawful speed shall forfeit any right-of-way which he might otherwise have hereunder.' Is that what you refer to, Mr. Hambright?

"Mr. Hambright: If the Court please, there is some provision therein to the effect that a car approaching but not having entered the intersection shall yield the right-of-way to a car that had actually entered the intersection first.

"The Court: Members of the Jury, the Act of Assembly provides, too, that 'the driver of a vehicle . . . . . .

approaching but not having entered an intersection shall yield the right-of-way to a vehicle within such intersection.' Is that it, Mr. Hambright?

"Mr. Hambright: That is it, Your Honor."

We think that the instructions were too meager to supply the jury with the proper legal method for determining the issues of negligence and contributory negligence. True, the trial judge defined those terms, but he did not give the jury any guide for applying them to the facts of the case, as they might be found by the jury. The jury should have been informed what conduct on the part of defendant would, under the evidence, have constituted negligence *(Faulkner v. Delph Spinning Co., Inc.,* 245 Pa. 40, 45, 91 A. 607; *Tiribassi v. Parnell, Cowher & Co.,* 106 Pa. Superior Ct. 168, 174, 161 A. 477), and it was the duty of the trial judge to explain to the jury what would constitute negligence of plaintiff, and then to instruct them that if they found such facts in the case, plaintiff could not recover if the accident resulted wholly or in part from such contributory negligence *(New York, etc., R. Co. v. Enches,* 127 Pa. 316, 323, 17 A. 991). See *Filer v. Filer,* 301 Pa. 461, 465, 152 A. 567.

The relative rights and duties of the parties, under the circumstances, were not sufficiently defined to the jury by the trial judge by reading merely the section of The Vehicle Code, 75 PS §572, relating to the right of way at intersections. The obligations which the law imposes upon the operators of motor vehicles at intersections should have been interpreted with respect to the conflicting versions of the occurrence as they appeared in the testimony. Nothing appears in the charge concerning the limitations on the right of way, regardless of whether it is claimed by virtue of having entered the intersection first *(Haney v. Woolford,* 124 Pa. Superior Ct. 208, 211, 188 A. 405), or because plaintiff, approaching the intersection at approximately the

same time as defendant, was to the right of the latter *(Alperdt et ux. v. Paige,* 292 Pa. 1, 140 A. 555). The inadequacy of the charge in this respect becomes apparent when it is compared with that approved by the Supreme Court in *Robinson v. Berger,* 295 Pa. 95, 98, 144 A. 899. Whether plaintiff in the operation of his automobile, or defendant in the operation of his truck, was negligent, under the circumstances, was the question to be determined by the jury under proper instructions, and it was the duty of the trial judge to have brought the issue clearly to the attention of the jury *(Richards v. Willard,* 176 Pa. 181, 205, 35 A. 114).

The charge of the court contained a rather complete summation of the testimony, definitions of negligence and contributory negligence, and a verbatim statement of the law as contained in a certain section of The Vehicle Code. But it failed to enlighten the jury as to what facts would constitute contributory negligence on the part of plaintiff, or negligence on the part of defendant in view of the testimony, and hence the jury had no guide by which to regulate their action in determining the controverted facts. *New York, etc., R. Co. v. Enches,* supra, p. 324.

Again, nowhere in the charge did the trial judge indicate upon whom rested the burden of proof. "This should have been carefully explained to the jury. The jury received no specific instruction whatsoever on the subject of burden of proof. That phrase nowhere appears in the charge. It is a primary duty of the trial judge—a duty that must never be ignored—in charging a jury to clarify the issues so that the jury may comprehend the questions they are to decide. Such clarification is impossible without clear instruction as to the burden of proof, the shifting of the burden in certain states of the record, and if plaintiff has offered prima facie proof of what he has pleaded, the duty then devolving on the defendant to come forward with evi-

dence. See *Henes v. McGovern,* 317 Pa. 302, 176 A. 503": *Sears v. Birbeck et ux.,* 321 Pa. 375, at page 383, 184 A. 6, at page 10. See *De Reeder et al. v. Travelers Insurance Co.,* 329 Pa. 328, 336, 198 A. 45; *Girard Trust Co. v. George V. Cresson Co. et al.,* 333 Pa. 418, 421, 5 A. 2d 221.

Finally, we think that the jury should have had some instruction concerning the quantity and quality of the evidence. They should have been told that it was their duty, after weighing the evidence carefully, to find for the party in whose favor it preponderated. *Richards v. Philadelphia Rapid Transit Co.,* 299 Pa. 163, 167, 149 A. 186; *Calvey Motor Co. v. Coyer,* 121 Pa. Superior Ct. 509, 184 A. 281. In the beginning of his charge the trial judge said: "The weight to be given to any portion of the testimony is for you. The credibility of the witnesses is for you,—their opportunities for knowing the facts to which they have testified, their manner of testifying, and of those things are for you." However, the significance of the recognized tests and the method of applying them to the witnesses should have been explained. See *Windle et al. v. Davis, Director General,* 275 Pa. 23, 27, 118 A. 503. For example, nothing was said concerning the relative value of interested and disinterested testimony, and that regard thereto should be had in weighing the conflicting testimony. *Davies v. Philadelphia Rapid Transit Co.,* 228 Pa. 176, 180, 77 A. 450. Although there was sharp conflict in the testimony, the charge contained no reference thereto, nor was there any statement or explanation to guide the jury in reconciling the contradictory testimony, if possible, or if they could not then how they should regard it or act in relation to it. *Richards v. Willard,* supra, p. 204.

It is the duty of the parties to ask for more definite instructions if it is thought that the charge of the court is inadequate or does not fully cover all questions, and

a failure to do so will as a rule be deemed a waiver of any objections that might otherwise be made, because one cannot take a chance on a verdict and then base the demand for a new trial on specific errors in the charge which he had ample opportunity to correct at the trial *(Medvidovich et al. v. Schultz,* 309 Pa. 450, 453, 164 A. 338) ; but "inadequacy of a charge may be taken advantage of on general exception where the instructions omitted are vital to a proper conception by the jury of the fundamental principles of law involved *(DiPietro v. Great Atlantic & Pacific Tea Co.,* 315 Pa. 209 [173 A. 165]), and the inadequacy is just as basic where, in a case like the present, the legally established methods of determining the factual question involved are not explained to the jury": *Patterson v. Pittsburgh Railways Co.,* supra, 322 Pa. 125, at page 128, 185 A. 283, at page 284. See *Finkelstein et ux. v. McClain,* 331 Pa. 198, 200 A. 596.

The several defects to which we have referred rendered the charge as a whole so inadequate as to leave the jury "without guide or compass," and together constitute basic and fundamental error.

Assignments of error are sustained.

Judgment is reversed, with a venire facias de novo.