McEwan *v.* Yellow Cab Company, Appellant.

Argued October 4, 1956. Before RHODES, P. J., GUN-
THER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ. (HIRT,
J., absent).

*Tom P. Monteverde,* with him *James J. Leyden, Joseph H. Klein,* and *Schnader, Harrison, Segal & Lewis,* for appellant.

*Michael C. Rainone,* for appellees.

OPINION BY ERVIN, J., November 13, 1956:

This is an appeal by defendant Yellow Cab Company in an action of trespass brought by plaintiffs, James H. McEwan and Josephine McEwan, his wife, to recover damages for personal injuries sustained by Mrs. McEwan. Plaintiffs were passengers sitting in the rear seat of the defendant's taxicab which was headed north on Germantown Avenue in Philadelphia. The taxicab stopped as it approached the intersection of Germantown Avenue and Huntingdon Street and was struck in the rear by an automobile operated by co-defendant William H. Harris. The trial resulted in a verdict by the jury of $4,000.00 for the wife plaintiff and $1,000.00 for the husband plaintiff, against both defendants. No motions were filed by defendant Harris challenging the verdicts. Defendant Yellow Cab Company filed motions for a new trial as to both plaintiffs on the grounds that the verdicts were grossly excessive, and insofar as they subjected Yellow Cab Company to liability were against the weight of the evidence and the result of the trial judge's inadequate in-

structions on the law. Motions for new trial were refused by the court in banc and from the judgments entered on the verdicts the Yellow Cab Company took this appeal.

The accident occurred on Sunday, September 5, 1954, at about 4:45 p.m. The weather was clear and the streets were dry. Huntingdon Street runs in a generally east-west direction. Germantown Avenue runs in a generally northwest-southeast direction. However, about 150 feet south of Huntingdon Street, Germantown Avenue bends sharply to the east. It bends again to the east, though not so abruptly, about 50 feet south of Huntingdon Street. Thus the vision of northbound motorists is obstructed by these two bends so that the intersection does not come into view until an approaching vehicle is somewhere between these two bends.

In order to determine whether the charge of the court was so inadequate, misleading and prejudicial as to necessitate the granting of a new trial the charge must be considered in relation to the testimony and the legal issues thus arising in the case.

William J. O'Connell, a cab driver with about six years' experience, testified that he operated his cab around the first of the above described bends in Germantown Avenue at a speed of 15 to 20 miles per hour and proceeded to a point approximately 75 feet south of Huntingdon Street, where he observed that the traffic light at Huntingdon Street was red for Germantown Avenue. O'Connell then braked his cab and brought it to a slow stop just south of the intersection. O'Connell testified that his cab was stopped at this light for about 10 or 20 seconds when it was struck in the rear by the Harris car and pushed north on Germantown Avenue to a point two or three storefronts

beyond Huntingdon Street. O'Connell stated that he and Mrs. McEwan were injured, and that the back of his cab and the front of the Harris car both sustained extensive damages.

George Alfred Fritz, a disinterested witness, testified for the Yellow Cab Company that he and his seven-year-old grandson were returning from the Philadelphia Zoo; that they alighted from an eastbound Huntingdon Street trolley at the southwest corner of this intersection; and that they then saw O'Connell's cab stopped for a red light on Germantown Avenue, just south of Huntingdon Street. While other passengers boarded this trolley, Fritz and his grandson first crossed Huntingdon Street in front of the trolley. Then, seeing that the light was still red for Germantown Avenue, they crossed Germantown Avenue in front of the taxicab, walking from the northwest to the northeast corner of the intersection. Fritz testified that when he reached the northeast corner he happened to look south on Germantown Avenue and so saw the Harris car round the bend south of Huntingdon Street at a speed which he estimated at 35 to 40 miles per hour and strike the rear of the cab, pushing it north of Huntingdon Street.

To establish their version of the accident, plaintiffs first called defendant Harris as on cross-examination. Harris stated that he had followed O'Connell's cab on Germantown Avenue for about eight blocks prior to the collision; that his vehicle was 15 to 20 feet behind the cab as both vehicles rounded the bends south of Huntingdon Street; that at that time they were both traveling between 15 and 20 miles per hour; that when his car was about halfway between the second bend and the intersection and the cab was about 10 feet from the intersection, and while the cab and his vehicle still

maintained their original speeds and relative positions, the light at Huntingdon Street changed from green to yellow; that about a second later, or when the cab was five or six feet from the corner, its tail lights went on as its brakes were applied "quite fast"; that Harris should have been able to stop his car "almost instantly" while traveling at a speed of 15 to 20 miles per hour; that, nevertheless, though he applied his brakes as soon as he saw the cab's tail lights glow, the front of his car hit the rear of the cab when the cab was still south of Huntingdon Street; and that he did not notice the color of the traffic light at the time of the impact or whether the cab was then stopped or moving.

Besides testifying as plaintiffs' witness, Harris also testified on his own behalf. He testified: "A. When we came to the intersection, the cab stopped, a dead stop, and that is when I hit the gentleman, because I just couldn't stop in time. Q. The light was not red? A. At that time it was red, yes."

Mr. McEwan testified that he and his wife entered the cab at their home in South Philadelphia and that after the pickup the cab proceeded about 41 or 42 blocks to the scene of the accident. Though he was not a driver and at one point admitted that he knew nothing about speed, McEwan estimated that the cab traveled at a speed of 35 to 40 miles per hour throughout this distance. He said that the cab was still traveling at that speed when it rounded the bends in Germantown Avenue below Huntingdon Street; that the cab stopped suddenly as it reached the intersection, throwing Mrs. McEwan forward and backward and causing her to hit her head on the back of the seat; and that "that quick," or within the space of "twenty, thirty seconds," the Harris car hit the rear of the cab and Mrs. McEwan was thrown from her seat. Mrs. Mc-

Ewan had "no idea" how fast the cab was going before the accident, and could not remember whether the cab was moving or stopped when it was struck.

The duties of a trial judge in charging the jury are set forth by President Judge RHODES in *Archer v. Pa. Railroad Company*, 166 Pa. Superior Ct. 538, 541, 72 A. 2d 609: "The primary duty of a trial judge in charging a jury is to clarify the issues so that the jury may comprehend the questions they are to decide. De Reeder v. Travelers Insurance Co., 329 Pa. 328, 336, 198 A. 45. If the charge is wholly inadequate or not clear, or has a tendency to mislead and confuse rather than to clarify the issues, a new trial will be granted. Randolph v. Campbell, 360 Pa. 453, 458, 62 A. 2d 60. The functions of a trial judge embrace not only the duty to state to the jury correct principles of law applicable to the pending case and to endeavor to make such principles understandable in plain language, but they also impose upon the judge the duty to assist the jury in applying those principles to the issues presented to them for determination. Kindt v. Reading Co., 352 Pa. 419, 429, 43 A. 2d 145. See Tietz v. Philadelphia Traction Co., 169 Pa. 516, 32 A. 583."

Concerning the law applicable to the questions involved the charge included a statement of the general principles of law pertaining to the burden of proof, preponderance of the evidence and the fact-finding function of the jury. However, after defining "negligence" under the laws of Pennsylvania and stating the "reasonably prudent man" standard the trial judge concluded his charge on liability as follows: "You will ask yourselves did the driver of the taxicab fail to do something which a reasonably prudent person would do under the circumstances. Did he do some act which a reasonably prudent person would not do? So, too, for the driver,

Mr. Harris, of the other automobile. *Would a reasonably prudent person follow closely another car that he says was going thirty-five to forty-five miles an hour within fifteen or seventeen feet? That is the thing that you would take into consideration. Would a driver of a taxicab suddenly stop without regard to what was behind him for a red light instead of slowing down as a reasonably prudent driver would do? Those are the things, members of the jury, that you will have to determine.*" (Emphasis added)

The charge, insofar as it purported to apply the law to the evidence concerning the conduct of the cab driver, was not only misleading and inadequate but highly prejudicial to appellant. The two hypothetical questions quoted above phrased the issues involved and focused the attention of the jury on the version of the evidence most favorable to the plaintiffs without any reference to or recognition of directly contradictory testimony favorable to appellant. Concerning the issue as to the speed of the taxicab the quoted excerpt of the charge states Harris said the taxicab was going 35 or 45 miles an hour. Harris did not testify that the taxicab was being operated at a speed of 35 to 45 miles per hour just prior to the collision. His testimony clearly was that neither he nor the cab driver was traveling at more than 20 miles per hour. The only witness who testified that the cab driver was traveling at 35 to 45 miles per hour was Mr. McEwan, one of the plaintiffs, who admitted he was not a driver and did "not know anything about speed." Moreover, his testimony indicated he saw the speedometer of the cab and that it registered the speed of the cab to be as he testified yet he was seated in the rear seat of the cab directly behind the driver. Also, the quoted excerpt of the charge clearly phrased the issue as to indicate the cab driver had stopped short for a red light without

regard to cars behind him and without slowing down, thus, in effect, withdrawing from the jury's consideration the testimony of the cab driver and the only disinterested witness, Fritz, that the taxicab was stopped at the intersection for some time before it was struck in the rear by the automobile driven by co-defendant Harris. The charge, in phrasing the issues involved as to the liability of both drivers solely on the basis of the evidence most favorable to plaintiffs was clearly prejudicial and requires the granting of a new trial. As stated in *Hess v. Mumma*, 136 Pa. Superior Ct. 58, 66, 7 A. 2d 72: ". . . it failed to enlighten the jury as to what facts would constitute contributory negligence on the part of plaintiff, or *negligence on the part of defendant in view of the testimony,* and *hence the jury had no guide by which to regulate their action in determining the controverted facts.*" (Emphasis added)

Appellant also contends the trial judge erred in refusing a request for a full charge on the provisions of the Vehicle Code governing the conduct of drivers at traffic lights (§1026(a) (b), 75 PS §635(a) (b)), speed (§1002(a), 75 PS §501(a)), signalling before stopping (§1012(a) (b), 75 PS §571(a) (b)) and following other cars (§1010(a), 75 PS §545(a)). The trial judge stated as his reason for refusing to charge on the provisions of the Vehicle Code: "I am not going to read them in detail because, even if you find that a man might be fined for not putting out his arm, that does not necessarily mean he was negligent. Negligence is negligence as I have described it to you. He may violate a traffic ordinance and still not be guilty of negligence, so far as the law of negligence is concerned in Pennsylvania. I am not going to read these."

In its request for a charge on the provisions of the Vehicle Code prohibiting following a vehicle too closely

and requiring that a driver maintain an assured clear distance (§§1002, 1010, 75 PS §§501, 545), appellant clearly was seeking an instruction which would convict Harris of negligence per se on his own admission that he might have been as close as five feet behind the cab and, in any event, was "awfully close." The sections of the Vehicle Code on which appellant specifically requested the court to charge were relevant as to the duties and responsibilities of both drivers under the circumstances surrounding the accident here involved and refusal to so charge was error. The failure of either driver to comply with the requirements of these pertinent provisions of the Vehicle Code may well have been considered by the jury as the proximate cause of the accident. As stated by Mr. Justice ARNOLD in *Pascarella v. Kelley,* 378 Pa. 18, 23, 105 A. 2d 70: ". . . the court's charge did not differentiate between the theories of liability nor the acts for which each defendant could be held responsible." In any event "The obligations which the law imposes upon the operators of motor vehicles at intersections should have been interpreted with respect to the conflicting versions of the occurrence as they appeared in the testimony." *Hess v. Mumma,* supra, at p. 65. See *Dandridge v. Exhibitors Service Co.,* 167 Pa. Superior Ct. 143, 74 A. 2d 670.

In view of our decision that a new trial be granted because of errors in the charge of the learned trial judge we deem it unnecessary to consider the other questions raised on this appeal.

Judgment reversed, with a venire facias de novo.