## Signor v. Johnson

*Robert J. Scallan*, for plaintiffs.

*Ralph B. D'Iorio*, for defendants.

DEFURIA, J., October 22, 1970.—A little boy is playing across the street from his home with a friend. He runs into the street toward his home and is struck by a car. This tragically familiar incident must have first occurred soon after the advent of the automobile age.

Carl Signor was four years old when he was severely injured on March 7, 1964, by the automobile owned by Casper Johnson, and driven by his son, Bruce Johnson.

Carl's parents, Jack and Elizabeth Signor, sued for his injuries and their expenses. The jury decided against plaintiffs, whose motion for new trial is before us.

There being no evidence of bailment or agency, a nonsuit as to Casper Johnson was entered. Plaintiffs do not contest the propriety of this ruling.

The guiding principle the court must observe in reviewing the record on a motion for new trial is clear:

The evidence received at trial will be considered in the light most favorable to the prevailing party, and he is entitled to all reasonable inferences in his favor that may fairly be drawn. The courts may assume as established all facts that the testimony in favor of the prevailing party reasonably tends to prove, and may resolve all conflicts in the evidence in his favor: 28 P. L. Encyc., New Trial, §81; Guriel v. Scott, 201 Pa. Superior Ct. 58 (1963).

I. *Did the trial judge err in refusing plaintiffs' offer of the posted speed limit on Hinkson Boulevard, which intersects with Comerford Avenue, the unposted street upon which the accident occurred?*

Defendant had driven from Hinkson Boulevard, a two-lane posted street in the Borough of Ridley Park, on to Comerford Avenue, a one-way street. The accident happened on Comerford Avenue about 180 feet west from its intersection with Hinkson Boulevard.

At the trial, plaintiffs advanced the farfetched theory that the posted speed limit on Hinkson Boulevard was "evidence of" the speed limit on Comerford Avenue. Plaintiffs' offer to show the posted speed limit on Hinkson Boulevard was refused. Then plaintiffs' witness, the Chief of Police, who admitted that Comerford Avenue was not posted at all, gave as his opinion that

the limit on Comerford Avenue was 25 m.p.h. On objection, this testimony was stricken.

Plaintiffs' attempts to adduce the above improper evidence led defendants' counsel to remark that the legal speed limit on Comerford Avenue was 50 m.p.h. under The Vehicle Code.

Even though The Vehicle Code of April 29, 1959, P. L. 58, as amended, 75 PS §1002(b)(6), does provide that the speed limit is 50 m.p.h. where a lower limit is not posted, and thus, defendants' counsel was correct, the trial court, in striking the testimony of a 25 m.p.h. limit, took the issue of a speed limit out of the case:

"THE COURT: We will have to strike from the testimony the testimony concerning a speed limit, a set mileage. We will strike that as not proper in this case, and tell the jury to disregard it. That doesn't happen to be admissible and, therefore, shouldn't be in the case. And you should not consider it. Just forget the speed limits."

Obviously, at this point, this instruction was more favorable to plaintiffs than they were entitled.

At argument, plaintiffs advanced the claim that the legislature, by requiring posting at one-eighth-mile intervals, intended the district or zone to encompass an area within a circle whose radius is one-eighth mile.

Neither the Statutory Construction Act nor The Vehicle Code defines "speed zones" or "speed districts." The relevant provision of the code, however, lends itself to only one interpretation.

Section 1002(b)(4), as amended, provides for a 25-, 35- or 40-mile-per-hour speed limit, "where official signs, erected by the proper authorities, on the right-hand side of the highway facing the traffic to be controlled, or on the left-hand side of one-way streets, are displayed. An official sign shall be similarly placed

one-eighth (1/8) of a mile before the beginning of the limited speed zone . . . This limit shall be observed for a distance beyond said sign for not more than one-eighth (1/8) of a mile."

The zone may be extended by placing additional signs at intervals of one-eighth of a mile.

Therefore, a posted speed limit under The Vehicle Code applies only to the street on which it is placed, because only on that street can the traffic to be controlled observe the notice of the sign.

By analogy, plaintiffs' theory would make the speed limit on unposted intersecting country roads the same as that of a superhighway. The Statutory Construction Act requires the "plain meaning" interpretation of laws, which means an interpretation that is not violative of common sense. Plaintiffs' contention, therefore, is without merit.

II. *Did the trial judge err in failing to instruct the jury that the speed limit on Comerford Avenue was not 50-miles-per-hour?*

Plaintiffs did not request such instruction by point for charge, or by amendment or correction, when so invited at the conclusion of the charge; nor was a specific exception thereto entered. As we have shown, the court did not "fail" in any respect because the legal speed limit was, in fact, 50-miles-per-hour: 75 PS §1002(b)(6).

The only reference to a 50-mile limit during trial arose when plaintiffs improperly attempted to introduce evidence of a fixed limit on Comerford Avenue, even though that street was not posted. Defendants' counsel then objected and mentioned the 50-mile limit as applicable, if any limit was.

It was clear that no posted speed limit was in issue; nor was the question, therefore, of exceeding a posted

limit. The highest speed shown by plaintiffs was 30 to 35 m.p.h., with a lower limit of 25 m.p.h.

The trial judge, therefore, properly took the issue of a speed limit out of the case, and placed before the jury the real issue qua speed: such reasonable speed as the circumstances dictated. The court did so both in its ruling on the objection, ante, and in its charge:

"Speed. There is no evidence in this case as to a speed limit or controlling signs. You will recall that the Court ruled and said there is no evidence as to speed limit on this street. You will accept that there isn't any.

"Now, the Motor Vehicle Code provides in part in Section 1002 as follows: Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed, not greater than nor less than is reasonable and proper having due regard to the traffic, surface and width of the highway, and of any other restrictions and conditions there existing.

"Now that is a general rule which applies to speed, and I believe that your common sense will tell you where there is no speed limit or nothing to tell you that there is a limit, the conditions tell you. You must drive according to the conditions. So, in a 50 mile per hour limit maybe only 15 would be proper. You understand that from your own knowledge. The general rule is that you must drive at a careful and prudent speed, according to the circumstances."

The charge is admittedly correct, but plaintiffs object to the illustration contained therein. The example accurately and most favorably to plaintiffs illustrated the application of the law. Plaintiffs' objection is without merit.

III. *Did the trial judge err in charging the jury on the degree of control required of a driver between intersections as opposed to that required at public crossings?*

No objections were made at trial by plaintiffs. They now single out this portion of the charge:

"Now considering that Carl was struck in the street and between intersections and the law given to you about speed and the presence of children, you should further consider that generally between intersections the operator of an automobile is not obliged to have it under instant control nor is the measure of care required of him as great as it is at public crossings."

Plaintiffs now say this isolated portion focused the jury's attention to one version of the evidence unfavorable to plaintiffs, and told the jury "to more or less disregard the fact that there were children present, even though the Court had charged on this point." But no evidence is referred to, at all, and the instruction is coupled with a reminder of the prior instruction as to speed and as to the presence of children.

While the charge must be considered as a whole (Segriff v. Johnston, 402 Pa. 109 (1960)) this portion is correct in itself: Ebersole v. Beistline, 368 Pa. 12 (1951); Finnin v. Neubert, 378 Pa. 40 (1954); Gatens v. Vrabel, 393 Pa. 155 (1958). Plaintiffs were entitled to a charge as to reasonable speed under the circumstances and as to care required in the presence of children. Since defendants were entitled to a charge as to control between intersections, plaintiffs' contention is without merit.

IV. *Did the trial judge err in charging the jury on contributory negligence as applying to the parent-plaintiffs?*

Plaintiffs claim that a charge on contributory negli-

gence of the parent-plaintiffs was not warranted, under the facts of the case.

All the evidence in the case indicated that the minor plaintiff, then four years of age, was struck by defendants' automobile while he was crossing, between intersections, from the northerly to the southerly side of Comerford Avenue, on which he lived with his parents.

The boy's father was working in front of his driveway, while his son played across the street. Children were playing on both sides of the street. Mr. Signor's back was to the street. Only seconds before the accident, the father had looked over to see if Carl was all right across the street. He heard and saw Carl playing there. He had looked a few minutes before also.

The boy's mother, Elizabeth Signor, was not at home, but was working in the City of Chester.

Since a parent's claim is derivative, and the jury found defendant free from negligence, the issue of the parents' contributory negligence appears academic. Nonetheless, from the facts in plaintiffs' own case, a charge on this issue was necessary.

The court carefully limited the issue to the claim of the parents, since the minor-plaintiff's age precluded his negligence: Hess v. Mumma, 136 Pa. Superior Ct. 58 (1939).

In general, whether reasonable care was exercised by the injured child's parents is for the jury: Fineman v. Philadelphia Rapid Transit Company, 42 Pa. Superior Ct. 379 (1910). Where plaintiff's evidence reveals contributory negligence, even though defendant produces no evidence on this issue, a charge on contributory evidence is proper: Matteo v. Sharon Hill Lanes, Inc., 216 Pa. Superior Ct. 188 (1970).

The court must charge if the issue of contributory negligence arises from the evidence produced by either

party: Heffernan v. Rosser, 419 Pa. 550 (1966); Rhode v. Kearney, 208 Pa. Superior Ct. 8 (1966); Andrews v. Long, 425 Pa. 152 (1967).

Should a father whose four-year-old son is in his care, and who allows the boy to play across the street, anticipate that his son might suddenly run across the street to his home? This issue of reasonable conduct under the circumstances was proper for presentation to the jury, and plaintiffs' contention has no merit.

V. *Was the verdict against the weight of the evidence?*

A witness testified for plaintiffs that he saw the child on a terrace across the street, and watched the boy "walk quickly," westwardly, on a diagonal, across the pavement and into the street. At a point seven feet from a car parked on the north side, the child was struck. At the same time that the witness first saw the boy on the terrace, he saw defendants' automobile on a line with the boy. The car proceeded westwardly at a speed of 30 to 35 miles per hour. The little boy, on foot, travelling a greater distance, reached the point of impact, at the same time as the car, which had travelled 60 feet!

Despite the incredibility of this witness' version as to the distance the child and the vehicle transversed simultaneously, the basic defect in his testimony was a failure to show (1) that the child was in the street for a time long enough to have been seen, and (2) that he was sufficiently in advance of the vehicle of defendant to have been avoided by the driver in the exercise of due care: Ebersole v. Beistline (directed verdict for defendant), ante; Gatens v. Vrabel (nonsuit), ante; Flagiello v. Crilly, 409 Pa. 389 (1963) (nonsuit).

Far from the weight of the evidence being on plaintiffs' side, the lack of evidence caused the trial judge to

consider a nonsuit, and refuse same with some apprehension. After jury verdict, the evidence must be viewed in favor of the verdict winner: Guriel v. Scott, ante.

Plaintiffs' argument is without merit.

Wherefore, we enter the following

ORDER

And now, October 22, 1970, plaintiffs' motion for a new trial is refused and dismissed.