Reed, Appellant, *v.* Philadelphia Transportation Co.

Argued March 26, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*David Kanner*, for appellant.

*I. Jerome Stern*, with him *Jay B. Leopold* and *Daniel J. McCauley, Jr.*, for appellees.

OPINION BY RENO, J., July 17, 1952:

Appellant was injured when a bus of the Philadelphia Transportation Company, in which he was a passenger, collided with the truck owned by Visco. He was rendered unconscious, and was taken to a hospital, where an examination and an X-ray indicated a possible fracture of the right hand and marked tenderness of the head. Eighteen days later a company physician examined him at his home and found: "The edge of the hand, right hand, was almost double the the size of the edge of the left hand, showing a heavy bruise." Subsequently, he developed a tic which caused a twitch of his shoulders and his face, and the dragging of his leg. Two physicians testified that he was suffering a traumatic neurosis as a result of the accident. Dr. A. M. Ornsteen testified on behalf of defendants that appellant was a malingerer. Liability was admitted, and the jury returned a verdict for $50. Appellant attributes the meagre verdict to the restrictions placed upon his cross-examination of Dr. Orn-

steen, and the ruling of the trial judge in that regard was the basis of appellant's motion for a new trial which was refused. This appeal followed.

Under cross-examination of Dr. Ornsteen, appellant's counsel developed that the doctor had testified in many cases over a long period of time, for the company and others, although he skillfully evaded exact numbers, which he called "statistics". He testified that he had received $50 for his pre-trial examination of appellant, and to the question, "What is your arrangement to be paid for testifying here?" he answered, "There are no arrangements made." Later the following colloquy occurred: "Q. How much do you *expect* to get paid for testifying here today? Mr. Axelroth: I object. The Court: Sustained. Mr. Kanner: Exception. The Court: There were no arrangements, that's his testimony." (Emphasis added.)

In *Grutski v. Kline,* 352 Pa. 401, 407, 43 A. 2d 142, in which Dr. Ornsteen was also involved, the Supreme Court declared: "It was pertinent for the jury to know what arrangements the doctors had made or were *contemplating making* for compensation for their services in the case and the trial judge's refusal to require them to testify under oath, and subject to cross examination, constituted substantial error which makes necessary the granting of a new trial." (Emphasis added.) In *Duffy v. Griffith,* 134 Pa. Superior Ct. 447, 454, 455, 4 A. 2d 170, again involving the same Dr. Ornsteen,[1] a new trial was awarded where the trial judge refused counsel to ask "a question as to how much he is being paid for coming here", Judge, now President Judge, RHODES said: "It was not proper for the trial judge to refuse to permit inquiry within reasonable limits as to the amount of the witness' compensation for testi-

---

[1] He was also a witness in *Com. v. Neill,* 362 Pa. 507, 67 A. 2d 276. See the dissenting opinion of Mr. Justice JONES at p. 525.

fying for the defense as a medical expert." See also *Com. v. Simmons*, 361 Pa. 391, 65 A. 2d 353; *Com. v. Farrell*, 187 Pa. 408, 41 A. 382; *Shannon v. Castner*, 21 Pa. Superior Ct. 294.

As justification for his ruling, the trial judge, in the opinion denying a new trial, said: "A contemplated mutual arrangement and an *ex parte* expectation are very different things, for a man may expect more than he gets. If it be argued that the word 'expect' may be interpreted either as a mere hope or as reliance upon something certain but still in the future, it is our view that the latter meaning was eliminated by the doctor's statement that *no* arrangement had been made. Had counsel questioned him in the words of the *Grutski* case, or had asked him if he meant to charge and negotiate, or had inquired whether there was an understanding based on past performance it would have been error to exclude the questions.[2] Standing alone, the doctor's 'expectation' was speculative, unilateral, and immaterial. This kind of cross-examination of an expert witness is expressly declared by the authorities above cited to be permissible 'within reasonable limits' only, and we do not think that such limits should be extended to allow inquiry into a witness's subjective mental processes."

The eminent judge's analysis of the *Grutski* case is not convincing, and the application of its rule to the pending factual situation is unduly restrictive. It

---

[2]Yet when counsel attempted to cross-examine upon past performances he was stopped by an objection. An excerpt from the record follows: "Q. Have you ever testified for Mr. Axelroth before? A. I have. Q. What were you paid? Mr. Axelroth: I object. The Court: Oh yes, yes indeed. Mr. Axelroth: We sat here and didn't object because we know there is a silly supreme court case that permits him to ask that question, but that's all he can ask. The Court: We're not interested in how much Mr. Axelroth or his clients may have paid the Doctor in other cases."

could not have been the intention of the Supreme Court to prescribe a rigid formulary of interrogation, requiring a cross-examiner to question a witness in the very words of the *Grutski* opinion. Apparently, under the opinion of the court below, had counsel inquired concerning a *contemplated* arrangement instead of an *expected* arrangement his question would have been free from objection. The difference between the two words is minute and vague. Both words describe "subjective mental processes"; both connote the mental state of looking forward; contemplation, as here employed, signifies a purpose in respect to the future; expectation is more than a bare hope, it implies a high degree of certainty that a future event will occur. The disjunctive reference in the *Grutski* opinion to "arrangements the doctors had made or were contemplating" clearly permits exploration of the future as well as of the past, of recompense that will be claimed as well as an express pre-trial agreement to pay a stipulated fee.

Decision need not rest upon semantics. The logic of words must yield to the logic of realities. Here is a physician with 32 years of experience as a court witness. His experience and prestige have undoubtedly created a demand for his services, which he is able to sell in a seller's market. In all probability he is not obliged to negotiate for fees; he commands them; and serves only those who meet *his* terms. It would be in keeping with the practice of other professional witnesses if he indeed fixed his fees unilaterally and ex parte. Howbeit, the witness, drawing upon his experience and his practice in charging and receiving fees, could have stated an estimate of the monetary value he placed upon his services; that is to say, what he expected to charge and receive and, even if he could not, the question itself was not outside of the "reasonable limits" of interrogation.

The amount of an expert's fees, whether stipulated in advance of a trial or determinable in the future, has a direct and vital bearing upon his credibility, his interest, bias, or partisanship, and the rule of the *Grutski* and cognate cases should be liberally applied. The ruling of the court constituted reversible error.

The other alleged error is without merit and will not be discussed.

Judgment reversed and a new trial awarded.