## Zamsky v. Pittsburgh Public Parking Authority, Appellant.

Argued March 23, 1954. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Ella . Graubart,* with her *. Patterson, . Crawford, Arensberg & Dunn,* for appellant.

*Henry Kauffman,* with him *Louis Little* and *Louis Rosenfield,* for appellees.

OPINION BY MR. JUSTICE ARNOLD, June 1, 1954:

Among the properties acquired by the Public Parking Authority of Pittsburgh was one at the corner of Smithfield and Third Avenue, consisting of a four-story, brick building not more than 60 years old. The premises were leased to three tenants, one of which

operated a restaurant on the ground floor, a Union had a room on the second floor, and Harry J. Zamsky, one of the appellees, operated a barroom on the ground floor and a stag hotel with 26 rooms on upper floors. Wilbur Mervis, the other appellee, had a one-half interest in the Zamsky lease, which he acquired by inheritance. The board of viewers awarded, inter alia, to Harry J. Zamsky, a one-half interest as tenant, $5,-437.50, and to Wilbur Mervis a one-half interest as tenant, $5,437.50. The two tenants took an appeal to the common pleas. The jury returned verdicts amounting to $26,460, one-half payable to Zamsky and one-half payable to Mervis. Defendant's motion for new trial was overruled, and it appealed to this Court.

Since the cases must go back for a new trial we shall not pass upon whether or not the verdicts and judgments were excessive, except to point out that they were more than twice the amounts awarded by the viewers.

All contentions of the appellant are overruled except one: At the trial of the case appellees were permitted to interrogate the Parking Authority's expert *about fees received over a period of more than five years for services rendered in the acquisition of some 39 separate pieces of property.* Such cross-examination was objected to and the objection overruled. That the appellees sought an advantage by means of this cross-examination is perfectly clear, else they would not have insisted on the admissibility of the testimony after the appellant had objected thereto. The answer given by the expert on cross-examination was $5,955.44. He was also asked to estimate his future compensation from the Parking Authority. This he put at from $2,500 to $2,700. His compensation in the cases on trial, as well as in all of the others upon which he was examined, was one-third of two per cent. of the sum

paid for the acquisition of any property; the commission of two per cent. being divided among the three members of the witness' firm which made the acquisitions. Thus the plaintiffs got before the jury that for services not rendered on the trial of this case (except in part) the firm of the expert witness had been paid $17,866.32, and in the future expected to receive $7,500 to $8,100. Thus error was thrice compounded, as we have said, and in addition consisted in admitting what the witness earned, not as an expert witness, but for general services to the Authority. This examination was clearly prejudicial error which must have contributed to the large verdicts for the plaintiffs.

It is entirely proper to inquire of an expert witness what his fees are for testifying in the case on trial: *Commonwealth v. Simmons,* 361 Pa. 391, 403, 65 A. 2d 353; *Grutski v. Kline,* 352 Pa. 401, 404, 43 A. 2d 142; *Reed v. Philadelphia Transportation Co.,* 171 Pa. Superior Ct. 60, 62, 90 A. 2d 371. But none of the reported cases go to the length that was permitted here, and in overruling the appellant's objection the court abused its discretion. The earnings of the expert witness from other services performed for the defendant were a purely collateral matter and the testimony thereon was not admissible to affect his credibility.

The judgments are reversed and new trials ordered.