500 P.2d 410

**In the Matter of the Last Will and Testament of Nettie B. CALLAWAY, Deceased.**

**Betty Callaway WILLIS and Virginia Callaway, Contestants-Appellants,**

**v.**

**Jack W. McCAW et al., Proponents-Appellees.**

**No. 9392.**

Supreme Court of New Mexico.

July 28, 1972.

Rehearing Denied Sept. 12, 1972.

Dow & Feezer, Carlsbad, for contestants-appellants.

Losee & Carson, Artesia, for proponents-appellees.

OPINION

McMANUS, Justice.

Nettie B. Callaway died testate on November 19, 1970. Her will dated July 29, 1967, and two codicils dated May 28, 1969 and February 24, 1970, respectively, were

**126**

presented for probate as Cause No. 3818 in the Probate Court of Eddy County, New Mexico. The proponent-appellee, Jack W. McCaw, was named executor and is one of the primary beneficiaries. The other proponents-appellees, Mary McCaw, Bob McCaw and Helen McCaw, are also primary beneficiaries.

The contestants-appellants, Betty Callaway Willis and Virginia Callaway Pack, petitioned the District Court of Eddy County for an order to transfer administration from the probate court. The petition was granted and the cause docketed as Cause No. 26899 in said district court. The appellants' answer, filed at the same time as the petition, established that the appellants were the decedent's sole heirs at law and raised the issues of incompetency of the testatrix, duress and coercion. The appellants also requested and were granted a jury trial.

The cause came on for trial on June 2, 1971 and on June 9, 1971, the jury rendered a verdict in favor of the appellees. The jury found that the testatrix had been competent to make the will and both codicils and that the will had been prepared without duress or coercion. Based on the jury verdict, the will and both codicils were admitted to probate. It is from this verdict that the contestants appeal.

The following facts are undisputed. The decedent was first hospitalized November 18, 1965 for a fractured hip in St. Mary's of Roswell. On February 16, 1966, she was transferred to Carlsbad Memorial Hospital with a decubitus ulcer. Once the ulcer was cured, she was transferred to Lakeview Christian Home. She remained in Lakeview from May 12, 1966, to June 4, 1966, when, upon her insistence, she was moved to Landsun Retirement Home where she resided in an apartment, with the exception of four hospital stays, until her death.

During the 1965–66 hospital stay in Roswell, the appellants herein filed an incompetency proceeding against the decedent in an attempt to have her declared incompetent and a guardian appointed. The proceeding was dismissed when the decedent was moved to Carlsbad. A second incompetency proceeding was then filed in Eddy County, but no action was ever taken on it. During the period of hospitalization and the incompetency proceedings, the decedent gave Jack McCaw a power of attorney to handle certain business affairs, and when she left the hospital she placed substantially all of her assets in trust with McCaw and the First National Bank of Roswell as co-trustees. There is evidence to indicate that the appellants were disinherited because of their attempts to have decedent declared incompetent, and the further fact that the decedent had become disenchanted with appellants for other reasons.

The will was written July 29, 1967, and the first codicil on May 28, 1969. During the entire period from the date of execution of the will to the date of execution of the first codicil the decedent had been a resident at the Landsun home and had not been hospitalized. The second codicil was drafted February 24, 1970, after the testatrix had been hospitalized for a brief period in the fall of 1969. The evidence indicates that during the entire period of time in dispute, the decedent remained rational, alert, intelligent and witty. She remained concerned about her appearance and maintained an active interest in current events, her family and the people with whom she lived. There is evidence, however, that decedent did have periods of irrationality and disorientation, but these seem to have coincided with the periods of hospitalization during which time the decedent suffered from the trauma of a series of fractures and was kept heavily sedated until her injuries had healed.

Much of the foregoing is challenged by the appellants in seven points for review by this Court. We will basically discuss only the second of these points.

Appellants' second point, upon which reversal is predicated, reads:

"The court committed error in admitting in evidence hospital records without re-

quiring proper identification of the records by the person who prepared the same."

The records referred to were labeled P–31, covering nurses' notes from July 11, 1967 to August 9, 1967, and P–39, covering nurses' notes from April 28, 1969 to June 24, 1969, and from February 6, 1970 to March 16, 1970. The main error arose when these records were admitted, upon identification of the records by the Landsun Home administrator, for the limited purpose of showing what drugs had been dispensed to the decedent during her stay in that Home. The notes were inadvertently passed to the jury, who were allowed to read them although the comments by the nurses as to the general condition of the decedent had been specifically excluded by the trial court upon the objection of the appellants.

■ The law recognizes that certain evidence may be admitted for a limited purpose. This principle has been recognized in New Mexico in the case of Carron v. Abounador, 28 N.M. 491, 214 P. 772 (1923), where this Court stated:

"This instrument, however, was introduced for the sole and single purpose of showing the price and value of the automobile when new. This limitation was placed upon the evidence by * * * counsel at the time it was tendered, and it was admitted by the court, with the statement that it would be received for such purpose. Having been thus limited in its purpose and function, it cannot now serve to create the legal presumption that the property thereby conveyed became vested * * * as * * * separate property. It can serve no purpose beyond that to which it was limited."

In this case, the nurses' notes were admitted for the sole purpose of showing what drugs had been administered. On examination of the administrator of the Landsun home, the following transpired:

"Q. I will hand you what is marked Proponent's 31 and ask, Mr. Sadler, if that is a copy of the nurses' notes which you have been testifying to, or testifying about, covering the period of July 11, 1967, through August—I'm sorry, July 11, 1967, through August 9, 1967?

"A. Yes, sir, those are copies.

 * * * * * *

"MR. DOW: If the Court please, I am going to object to this on the grounds that Mr. Sadler—

"THE COURT: Let me see it.

"MR. DOW:—testified that he came here on May 17 of 1968, and this is covering a period of time prior to the time that he was there.

"THE COURT: Is that your only objection?

"MR. DOW: We would object to it further on the ground that the notes are made by various and sundry nurses, and since they aren't qualified as expert witnesses, and I don't know whether they are even here or not, we would object to it being introduced into evidence.

"THE COURT: I will permit it to be introduced insofar as it shows what drugs were administered to the patient during that period of time. Now, the remarks made by the nurses on the righthand side with reference to a good day or a bad day, are conclusions which I don't think are proper.

"MR. LOSEE: Well, Judge, there actually are none that I know of as to her condition. That's the purpose of introducing it.

"THE COURT: Well, she says 'Very good day.' That's by a nurse, and they are entitled to cross examine with reference to that. Now, the records so far as the pills that were given and what kind of drugs were given, will be admitted, but the—the remarks of the various nurses on how she felt and anything of that kind, will not be admitted. * * *"

Following the quoted exchange, there was some additional conversation and exhibit #31 was passed to the jury. The examination of the witness continued and the following then took place:

"Q. Mr. Sadler, let me also hand you what has been marked Proponent's 39 and ask if this covers, or is a copy of the same type of nurses' notes made from the date April 28th, 1969, through June 24, 1969, and the period from February 6, 1970, through March 16, 1970?

"A. Yes, sir, this is the nurses' notes from these records.

"MR. DOW: We will offer the same objections to this as we did to the others, if the Court please.

"THE COURT: Restate them.

"MR. DOW: That the nurses' notes insofar as they state how the patient was, anything except what she was given, the drugs, would be hearsay, unless that witness who happened to write that were here and could be questioned by me on cross examination.

"THE COURT: It will be sustained as far as that is concerned, but it will be admitted for all other purposes. It may be introduced for the purpose of showing what drugs she was administered and where she was and so forth. The remarks made by the nurses as to how she was on a particular day are not admissible."

Exhibit #39 was then passed to the jury for examination. The appellants' attorney did not see the jury receive either of the exhibits and it was not until some time later that he made his objection to the jury's being allowed to see the notes in their entirety. The trial court refused the objection on the basis that it was not timely raised and that the jury had been instructed to ignore the comments printed on the notes by the nurses. The record reflects that counsel made his objection as soon as possible under the circumstances.

Not only is the law clear as to the admission of part of a piece of written evidence, it is also clear that an instruction to the jury to disregard certain parts of the evidence is proper at the time that the evidence is offered. Naturally, it would be preferable to obliterate or cover the parts to be disregarded, if possible, to prevent prejudice. See Yuin v. Hilton, 165 Ohio St. 164, 134 N.E.2d 719 (1956); 29 Am. Jur.2d Evidence, § 837 (1967). It was error for the trial court to allow the jury to see the entire text of the record and since the comments could well have prejudiced the jury, the error was not harmless and the verdict should be reversed.

The error was not corrected by the attempt on the part of the appellees to argue, for the first time on appeal, that the New Mexico Business Records As Evidence Act [§ 20–2–12, N.M.S.A.1953] was applicable in this situation. The law is clear in that the various forms of the model act have been held to apply to hospital records and New Mexico seems to recognize the rule in Sapp v. Atlas Building Products Co., 62 N.M. 239, 308 P.2d 213 (1957).

However, appellees may only raise this matter by cross-appeal under Rule 17(2), Supreme Court Rules [§ 21–2–1(17) (2), N.M.S.A.1953 (Repl.Vol. 4, 1970)]. As cross-appellants, they would be confined to issues raised below. Because appellees did not object to the trial court's ruling excluding the nurses' opinion comments, no error was preserved for review and we do not consider the Act as applied to this case. The trial court must stand reversed on Point II.

In their Point VI the appellants allege that the trial judge was biased and prejudiced in his actions while the jury was seated, and that such actions were reversible error. The tenor of the Judicial Canons of Ethics indicates that a judge may properly intervene in the trial of a case to promote expedition and prevent unnecessary waste of time, or to clear up some obscurity, but he should bear in mind that his undue interference, impatience or

participation in the examination of witnesses or a severe attitude on his part toward witnesses or counsel may tend to prevent the proper presentation of the cause, or the ascertainment of the truth therein. See Supreme Court Rule 31(15) [§ 21–2–1(31) (15), N.M.S.A.1953 (Repl.Vol. 4, 1970)]. Several portions of the transcript in this case reflect what appeared to be sharp colloquy between the court and counsel. However, a cold, bare transcript sometimes does not reflect the total atmosphere of a trial. A further discussion of this point is unnecessary because the suit is to be reversed on other grounds.

In keeping with the foregoing, this cause is reversed and a new trial will be commenced as soon as possible.

It is so ordered.

OMAN, J., and SANTIAGO E. CAMPOS, D. J., concur.