**UNITED STATES of America,**
**Appellee,**

v.

**Allen DORFMAN, Appellant.**

**No. 235, Docket 72–1574.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 25, 1972.

Decided Nov. 29, 1972.

Certiorari Dismissed April 12, 1973.
See 93 S.Ct. 1561.

See, also 2 Cir., 335 F.Supp. 675.

Richard J. Burke, New York City (Myron J. Greene, New York City, on the brief), for appellant.

Richard Ben-Veniste, Asst. U. S. Atty. (Whitney North Seymour, U. S. Atty., Michael B. Mukasey, John W. Nields, Jr., Asst. U. S. Attys., on the brief), for appellee.

Before MOORE, HAYS and MULLI-GAN, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from a judgment of conviction for conspiracy to violate § 1954 by accepting a bribe for influencing the operations of an employee pension plan, and § 1343 by using interstate wire facilities for the purpose of fraud, and on five substantive counts of violation of § 1343, entered in the United States District Court for the Southern District of New York on a verdict of a jury after a two week trial. We affirm.

Appellant was special consultant to the Central States, Southeast and Southwest Areas, Pension Fund of the Inter-

national Brotherhood of Teamsters. In 1967, shortly after Dorfman was designated special consultant, the Pension Fund made a loan of $1,500,000 to Neisco, a textile manufacturing firm controlled by one George Horvath. The Government claimed that this loan was a result of a $55,000 bribe by Horvath to Dorfman and that in return for the bribe, Dorfman agreed not only to arrange for the loan but that he would use his influence to cause the Pension Fund to administer the loan permissively. The jury found Dorfman guilty of the conspiracy to violate §§ 1954 and 1343 and of five substantive counts of violation of § 1343.

Appellant contends that the testimony of Samuel Rubin, a Government witness, with respect to two conversations he had with Horvath in the summer of 1967 should have been excluded as hearsay. The first conversation occurred in June when Horvath asked Rubin to sign a check drawn on the account of Mt. Clemens Industries Inc., of which Rubin was vice-president, stating that the money was to be used to purchase a certain Swiss corporation. Rubin asked Horvath if the Swiss transaction was connected with the Neisco Pension Fund Loan request and whether it was to help get the loan approved by "greasing the skids." Rubin testified that Horvath replied in the affirmative. The second conversation occurred in July when Horvath told Rubin that $55,000 out of the Swiss transaction had been used to pay the appellant.

■ The defense had attempted to show that Horvath had motives of personal revenge for falsely implicating Dorfman. These alleged motives were based upon events which occurred *after* Horvath's statements to Rubin. Rubin's testimony was therefore admissible to show that Horvath had implicated Dorfman *before* the time of the events. providing the basis for the alleged motives for falsification. This exception to the hearsay rule for "prior consistent statements" is well established. See United States v. DiLorenzo, 429 F.2d 216, 220 (2d Cir. 1970), cert. denied, 402 U.S.

950, 91 S.Ct. 1609, 29 L.Ed.2d 120 (1971); United States v. Grunewald, 233 F.2d 556, 566 (2d Cir. 1956), rev'd on other grounds, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); Proposed Federal Rules of Evidence, 801(d)(1)(B) (adopted on November 20, 1972).

■ Rubin's testimony as to Horvath's statements to him was also admissible because the statements were made in furtherance of the conspiracy. United States v. Sansone, 231 F.2d 887, 892–893 (2d Cir.), cert. denied, 351 U.S. 987, 76 S.Ct. 1055, 100 L.Ed. 1500 (1956). Since Rubin's cooperation as an officer and particularly as the officer in charge of the Mt. Clemens books was important for the purpose of concealing the conspiracy and for effectuating the "permissive" attitude of the Pension Fund toward the loan, Horvath's statements to Rubin were clearly made with the purpose of furthering the conspiracy.

■ We have considered appellant's contention that he was unduly limited in his attempt on cross-examination to impeach Rubin's credibility by introducing extrinsic evidence showing Rubin had made inconsistent statements, and find no error in the exclusion of this collateral issue. Appellant makes a similar complaint with respect to the limits imposed by the court on his cross-examination of Horvath and on the presentation of extrinsic evidence in an attempt to establish that Horvath was motivated to implicate Dorfman by his hope of securing lenient treatment with respect to certain tax violations with which the Government had charged him. In cases in which the alleged motive of a government witness is hope for prosecutorial leniency there will always be conflict between the need to keep the trial from being sidetracked on collateral issues and the right of the defendant to establish a witness' bias or motive to lie. We think the trial court successfully accommodated these competing considerations in this case.

■ Defendant contends that the Government was improperly allowed to establish that Dorfman had an interest

in certain properties on which the Fund made loans. This evidence was elicited not for the purpose of showing any misconduct on Dorfman's part but because the Government thought it necessary to establish that the relationship between Dorfman and the trustees of the Fund who testified in his behalf was somewhat more complex than would be indicated by the simple special consultant position upon which the defense relied to show that Dorfman could not have influenced the granting of the loan to Horvath's company. There was no impropriety in the Government's cross-examination on this score.

■ Appellant complains that the name of James R. Hoffa was introduced unnecessarily and prejudicially. But Hoffa who admittedly had a dispositive influence with respect to loans, was Dorfman's predecessor on the all-powerful screening committee. By its references to Hoffa the Government sought to show that, as Hoffa's successor, Dorfman had the ability to influence the Fund's decision to grant or deny the loan.

Affirmed.