564 P.2d 619

**Dwaine BENDORF, Plaintiff-Appellant,**

v.

**VOLKSWAGENWERK
AKTIENGESELISCHAFT,
Defendant-Appellee.**

No. 2648.

Court of Appeals of New Mexico.

April 5, 1977.

Certiorari Denied May 11, 1977.

Lorenzo A. Chavez, James H. Foley, Albuquerque, for plaintiff-appellant.

Eugene E. Klecan, James T. Roach, Klecan & Roach, Albuquerque, for defendant-appellee.

## OPINION

HENDLEY, Judge.

Plaintiff appeals an adverse verdict after retrial. See *Bendorf v. Volkswagenwerk Aktiengeselischaft,* 88 N.M. 355, 540 P.2d 835 (Ct.App.1975) (*Bendorf I*). Plaintiff

claims the accident was caused by a defective seat track mechanism made by defendant. Defendant claims the seat track mechanism was not defective and even if defective it was plaintiff's wrongful driving which caused the accident or plaintiff assumed the risk of the defect because he knew of the defect. The facts are basically set forth in *Bendorf I.*

Plaintiff's points for reversal on appeal are: (1) the jury was erroneously instructed that ordinary contributory negligence is a complete defense; (2) the jury was erroneously instructed on ordinary contributory negligence; (3) the trial court's conduct deprived plaintiff of his day in court; (4) the trial court erred in refusing to allow defendant's expert witness to be examined as to his compensation; (5) the trial court erred in admitting testimony of how the seat track mechanism operated after the accident; and (6) the trial court erred in refusing to admit prior consistent statements of plaintiff.

### Contributory Negligence

■ Before reaching plaintiff's two arguments concerning the jury instructions we feel it advisable to briefly discuss our decision in *Bendorf I.* In that case we said that: " * * * the jury was incorrectly instructed that plaintiff's negligent driving was contributory negligence, an affirmative defense, and, therefore, that a finding that plaintiff drove negligently required a verdict for the defendant regardless of its findings as to proximate cause. * * * " *Bendorf I.* The jury was also instructed that contributory negligence is " * * * negligence on the part of plaintiff that proximately contributed to cause his damages." *Bendorf I.* We stated that the affirmative defense of assumption of the risk and misuse were not involved in the case and that "* * * defendant's defense should only have prevailed if plaintiff's negligent driving had caused the accident. * * * " *Bendorf I.* The error, therefore, was that the instruction required a verdict for the defendant if the jury believed that plaintiff's wrongful driving and the defective seat were concurring causes of the accident. Our decision implicitly adopted the view that " * * * if a product is defective, if the plaintiff is unaware of that defect, and if that defect is the proximate cause of the plaintiff's [accident], then the fact the plaintiff's negligent conduct may have concurred with the defect to cause * * * [the accident] should have no bearing on the validity of the initial policies calling for the application of strict liability. * * * " *Bachner v. Pearson,* 479 P.2d 319 (Alaska 1970). Accord, *Findlay v. Copeland Lumber Company,* 265 Or. 300, 509 P.2d 28 (1973). The result being that the jury should not have been required to find for the defendant unless they found that plaintiff's wrongful driving was the *sole* proximate cause of the accident. See *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48 (Okl.1976).

In the present appeal, the trial court's instruction No. 1 read as follows:

"The Plaintiff claims that he sustained damages and that the proximate cause thereof was one or more of the following acts:

"That in designing, constructing and assembling the 1964 Volkswagen, it was so designed, constructed and assembled that the front seat, when used by the driver in the usual type of traffic, would move interferring with the safe operation of the vehicle;

"That on the 17th day of February, 1969, the Plaintiff was driving a 1964 Volkswagen in a northerly direction on San Mateo N.E., and as he was driving across I–40, traffic conditions made it necessary for him to apply the brakes as would be expected under the then existing conditions and as he did so, the seat moved, causing Plaintiff to lose control of his car, run a red light and collide with another car, which resulted in injuries which have left him paralyzed.

"The Plaintiff has the burden of proving that he sustained damages and that one or more of the claimed acts was a proximate cause thereof.

"A. The Defendant denies all the Plaintiff's claims and asserts that the accident was not caused by a defect in the seat assembly of his automobile, if any such defect existed, but was caused by one or more of the following acts of wrongful driving conduct on the part of the Plaintiff:

"1. That the Plaintiff failed to keep a proper lookout for the traffic signals and approaching vehicles and that said failure was the proximate cause of the alleged accident and resulting injuries.

"2. That the Plaintiff failed to yield the right of way at the intersection to the Mustang driven by Mr. Torrez and that said failure was the proximate cause of the alleged accident and resulting injuries.

"3. That the Plaintiff failed to stop in obedience to the traffic signals which were operating at the intersection and that said failure was the proximate cause of the alleged accident and resulting injuries.

"4. That the Plaintiff failed to keep his car under proper control as he approached the intersection when he knew there were traffic signals in operation and that said failure was the proximate cause of the alleged accident and resulting injuries.

"5. That the Plaintiff failed to exercise ordinary care for his own safety and that such failure was the proximate cause of the alleged accident and resulting injuries.

"B. That Defendant further asserts the following affirmative defense:

"1. That Plaintiff was contributorily negligent in that Plaintiff discovered any defect of which he complains but nevertheless unreasonably used the product and assumed the risk while he knew of the defect and danger and that such contributory negligence by the Plaintiff was a proximate cause of the alleged accident and resulting injuries.

"The Defendant has the burden of proving the affirmative defense and that said defense was a proximate cause of the alleged accident and resulting injuries.

"If Defendant's assertions of wrongful driving conduct by Plaintiff as stated above in A-1, 2, 3, 4 or 5 did occur, but were proximately caused by a defect in the product, that is, the seat assembly of the VW, then the said alleged acts of wrongful driving conduct would not be *the proximate cause* of the accident and therefore would not bar a recovery. (Emphasis ours).

"If you find that Plaintiff has proved those claims required of him, including proximate causation, then your verdict should be for the Plaintiff.

"If on the other hand, you find that any one of the claims required to be proved by the Plaintiff has not been proved, including proximate causation, or that any one of Defendant's assertions of wrongful driving has been proved, and that such was the proximate cause of the accident, or, if you find that Defendant's affirmative defense has been proved and that such was a proximate cause of the accident, then your verdict should be for the Defendant."

The jury here was not specifically instructed as in *Bendorf I*, that plaintiff's wrongful driving was contributory negligence, an affirmative defense. Plaintiff objected to the above quoted instruction stating that " * * * it instructs the jury that if the plaintiff's behavior was the proximate cause, they cannot recover. * * * " The jury was also given several instructions on plaintiff's duty to use ordinary care. Plaintiff claims these instructions erroneously injected the issue of contributory negligence into the case.

Assuming, without deciding, that plaintiff is correct in his assertions we find that reversal of this case is not required. The jury was told in instruction No. 1 that if plaintiff's wrongful driving was *the proximate cause* of the accident then their verdict should be for the defendant. The definition of proximate cause given to the jury states: "[t]he proximate cause * * * need not be the only cause, nor the last nor

the nearest cause. It is sufficient if it occurs with some other cause * * * " No other instruction on proximate cause was given. It is clear that by applying the proximate cause instruction given to instruction No. 1 the jury would have been required to find for the defendant even if they found that plaintiff's wrongful driving and the defective seat were concurring causes of the accident.

However, instruction No. 1 was not erroneous. The proximate cause instruction was erroneous because it allowed the jury to elevate plaintiff's wrongful driving to contributory negligence as an affirmative defense and clearly was an inappropriate instruction in this case. *Bendorf I.*

■■ The proximate cause instruction was not only unobjected to by the plaintiff but it had been requested by the plaintiff. It thus became the law of the case. *Demers v. Gerety*, 85 N.M. 641, 515 P.2d 645 (Ct.App.1973); rev. on other grounds, 86 N.M. 141, 520 P.2d 869 (1974); *Griego v. Conwell*, 54 N.M. 287, 222 P.2d 606 (1950); *Marchant v. McDonald*, 37 N.M. 171, 20 P.2d 276 (1933). Plaintiff cannot now complain of the contributory negligence aspect of this case when he requested the erroneous instruction which was given to the jury. *Territory v. Yarberry*, 2 N.M. 391 (Gild. 1883); See *Cochran v. Gordon*, 77 N.M. 358, 423 P.2d 43 (1967); *Platero v. Jones*, 83 N.M. 261, 490 P.2d 1234 (Ct.App.1971).

### Trial Court's Conduct

Plaintiff contends that certain comments by the trial court were so prejudicial that he was denied a fair and impartial trial. The passages cited by the plaintiff do show that some rather severe comments were directed towards plaintiff's counsel. As to the propriety of the trial court's conduct our Supreme Court stated in *In re Will of Callaway*, 84 N.M. 125, 500 P.2d 410 (1972) the following guidelines:

"The tenor of the Judicial Canons of Ethics indicates that a judge may properly intervene in the trial of a case to promote expedition and prevent unnecessary waste of time, or to clear up some obscu-

rity, but he should bear in mind that his undue interference, impatience or participation in the examination of witnesses or a severe attitude on his part toward witnesses or counsel may tend to prevent the proper presentation of the cause or the ascertainment of the truth therein. * * * "

■■ The question is whether the conduct of the trial court was so prejudicial to plaintiff's case as to require a new trial. It is obvious that " . . . a cold bare transcript sometimes does not reflect the total atmosphere of a trial." *Callaway*, supra. We, therefore, cannot substantiate plaintiff's claim of "reproachful looks" coming from the trial court. See *State v. Gurule*, (Ct.App.) 90 N.M. 87, 559 P.2d 1214, decided January 4, 1977. The record does indicate that critical remarks by the trial court were directed to defense counsel as well as plaintiff's counsel. After examining the record of proceedings prior to the trial court's remarks it is apparent that many of the remarks were entirely justified. The jury was also instructed by the trial court not to let the court's remarks influence their decision. We hold that the conduct of the trial court, when considered in context, was not so prejudicial so as to require a new trial.

### Compensation of Expert Witness

On cross-examination plaintiff's counsel questioned one of the defendant's expert witnesses as to the amount of compensation he had received from the defendant. The witness responded by saying he charged "$95.00 an hour." When the witness was asked if this meant that in 1974 he received $180,000.00 the trial court sustained defendant's objection that the answer would be immaterial. Plaintiff claims this was reversible error.

■■ It is proper to question a witness as to his payment for testifying as an expert and a trial court's refusal to allow such questioning may constitute reversible error. *State v. Clarkson*, 58 N.M. 56, 265 P.2d 670 (1954). However, the decision to admit or exclude evidence rests within the sound dis-

cretion of the trial court and the trial court's decision will not be overturned absent an abuse of discretion. *State v. Bell*, 90 N.M. 134, 560 P.2d 925, decided March 1, 1977. The record does not disclose an abuse of discretion. Further, even assuming error, it was harmless. *Scott v. Brown*, 76 N.M. 501, 416 P.2d 516 (1966). Plaintiff was afforded the opportunity of soliciting testimony from the expert that he was a paid witness.

### Seat Track Mechanism

■ A reasonable inference is a conclusion arrived at by a process of reasoning. This conclusion must be a rational and logical deduction from facts admitted and established by the evidence, when those facts are viewed in the light of common experience. *Williamson v. Piggly Wiggly Shop Rite Foods, Inc.*, 80 N.M. 591, 458 P.2d 843 (Ct.App.1969).

■ Over plaintiff's objections of relevancy and materiality the trial court allowed the introduction of defendant's testimony concerning how the Volkswagen seat track mechanism operated subsequent to the accident. The testimony showed that subsequent users of the seat track had no problems with the seat track slipping or otherwise malfunctioning. There is no indication from the testimony that the seat track mechanism was altered after the accident.

This testimony gave rise to a reasonable inference that the seat track mechanism was working properly before the accident. *Ferran v. Jacquez*, 68 N.M. 367, 362 P.2d 519 (1961). The trial court properly admitted the testimony. It was relevant and material on the claim of a defective seat track mechanism.

### Prior Consistent Statements

■ Plaintiff's trial testimony was that he had run the red light because the defective seat had caused him to lose control of the car.

In his opening statement defense counsel stated that the evidence would show that immediately after the accident plaintiff had stated to two people that he had missed the red light because he had been reaching over towards his child who had fallen off the seat. The evidence adduced at trial indicated that plaintiff had made the alleged statements. Plaintiff had no recollection of the incident and did not deny making the statements.

Plaintiff was refused permission to introduce testimony of two witnesses who would have testified that two or three hours after the accident and again two months after the accident plaintiff had made statements similar to his trial testimony as indicated above. The trial court ruled the statements were inadmissible hearsay. Plaintiff contends the statements are not hearsay and should have been admitted under Rules of Evidence 801(d)(1)(B) which states in part:

"A statement is not hearsay if * * * [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive * * *."

As with the two previous points, the decision to admit or exclude evidence pursuant to Rule 801(d)(1)(B), supra, is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *State v. Bell*, supra.

We hold that the trial court properly exercised its discretion. In so holding we note: (1) the use of the prior inconsistent statement did not necessarily imply that plaintiff's trial testimony was recently fabricated or was made from an improper influence or motive. *Coltrane v. United States*, 135 U.S.App.D.C. 295, 418 F.2d 1131 (1969); *Hanger v. United States*, 398 F.2d 91 (8th Cir. 1968); 4 Wigmore, Evidence, § 1126 (1972); McCormick, Evidence, § 49 (1972); (2) plaintiff is obviously an interested party in this case and allegedly made the prior consistent statements after the accident and at a time when a motive was present for the plaintiff to deny any wrong

doing. *United States v. Greene*, 497 F.2d 1068 (7th Cir. 1974); *United States v. Dorfman*, 470 F.2d 246 (2d Cir. 1972); see *Applebaum v. American Export Isbrandtsen Lines*, 472 F.2d 56 (2d Cir. 1972); and (3) the prior consistent statements were made after the prior inconsistent statement. *Felice v. Long Island Railroad Company*, 426 F.2d 192 (2d Cir. 1970); *Ayres v. Keith*, 355 S.W.2d 914 (Mo.1962); McCormick, supra; see *Applebaum v. American Export Isbrandtsen Lines*, supra.

Affirmed.

IT IS SO ORDERED.

HERNANDEZ, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I dissent.

Plaintiff appeals an adverse judgment a second time arising out of a products liability case heretofore reversed. *Bendorf v. Volkswagenwerk Aktiengeselischaft*, 88 N.M. 355, 540 P.2d 835 (Ct.App.1975) (*Bendorf I*). We should reverse this case again.

A. *Failure to instruct on sole proximate cause was reversible error.*

This case was tried on the single theory of strict liability in tort based on a defective product. We are confronted a second time with instructions given to the jury. In *Bendorf I*, we decided the following proposition:

We stress that, in the case at bar, defendant's theory of the case should be stated in terms of causation and not in terms of negligence or contributory negligence. * * * It is simply that, when the issue is causation in that *either* plaintiff's conduct *or* the product defect caused the injuries, questions of negligence are irrelevant. [Emphasis by Court] [88 N.M. at 360, 540 P.2d at 840.]

*Under this theory, plaintiff's misconduct as a misuse of the vehicle must be the sole proximate cause of the accident. Fields v. Volkswagen of America, Inc.*, 555 P.2d 48 (Okl.1976). Contra, *General Motors Corporation v. Walden*, 406 F.2d 606 (10th Cir.

1969). The Federal court misconstrued Arizona law stated in *O. S. Stapley Company v. Miller*, 103 Ariz. 556, 447 P.2d 248 (1968), upon which it relied. The jury was not so instructed. This was reversible error.

B. *Instructions on plaintiff's duties were erroneous.*

The court instructed the jury that on February 17, 1969, plaintiff drove a 1964 Volkswagen in a northerly direction on San Mateo, N.E., Albuquerque, New Mexico. As he drove across Highway I–40, traffic conditions made it necessary for him to apply the brakes and as he did so, the seat moved, causing him to lose control of the car, run a red light and collide with another car, which resulted in injuries that left him paralyzed.

The court also instructed the jury:

6. It is the duty of every operator of a vehicle using the public highway to exercise ordinary care at all times to avoid an accident.

7. It is the duty of every operator of a vehicle using the public highway to exercise ordinary care at all times to keep a proper lookout and to maintain proper control of his vehicle so as to avoid placing himself or others in danger and so as to avoid an accident.

8. The duty to keep a proper lookout requires more than merely looking. It also requires a person to actually see what is in plain sight or obviously apparent to one under like or similar circumstances in the exercise of ordinary care.

Further, with respect to that which is not in plain sight or readily apparent, a person is required to appreciate and realize what is reasonably indicated by that which is in plain sight.

9. It was the duty of the Plaintiff, before and at the time of the occurrence, to use ordinary care for his own safety.

These instructions are U.J.I. 9.1, 9.2, 9.3, and 12.3, respectively. They repeat and repeat claims of contributory negligence set forth in Instruction No. 1, infra. They were not applicable in this case. The failure of plaintiff to exercise ordinary care

was not a denial of the causal allegations that established a prima facie case for plaintiff, that a defect in the automobile was the proximate cause of the accident.

In *Bendorf I*, supra, the court instructed the jury that plaintiff was contributorially negligent if plaintiff failed to keep a proper lookout, and failed to keep his car under proper control. We held that, absent proximate cause of the accident, the instruction was erroneous.

Instructions No. 7 and 8, on proper lookout and proper control, are elements of contributory negligence of plaintiff, *Martinez v. City of Albuquerque*, 84 N.M. 189, 500 P.2d 1312 (Ct.App.1972), or to determine negligence of the defendant. *Sandoval v. Cortez*, 88 N.M. 170, 538 P.2d 1192 (Ct.App.1975). Negligent conduct of defendant is irrelevant because defendant was not operating a vehicle.

Instruction No. 9 stated that plaintiff had a duty to exercise ordinary care for his own safety. This is an instruction that "will not be used and is not proper unless there is an issue of contributory negligence to go to the jury." U.J.I. 12.3, Directions for Use; *Paddock v. Schuelke*, 81 N.M. 759, 473 P.2d 373 (Ct.App.1970).

Instruction No. 6, on the duty of plaintiff to exercise ordinary care to avoid an accident, also falls within the category of contributory negligence.

In *Bendorf I*, supra, we held that conventional contributory negligence was not a defense when the doctrine of strict liability applied.

Instructions No. 6, 7, 8, and 9, together with Instruction No. 1, infra, strongly pounded in the minds of the jury that plaintiff had a duty to exercise ordinary care, even though this conduct was unrelated to plaintiff's claim that the defective seat was the proximate cause of the accident. These instructions were prejudicially erroneous.

C. *The court's instruction on one of defendant's defenses was erroneous.*

Instruction No. 1 clearly stated that "The Plaintiff has the burden of proving

* * * ." It included a statement of defendant's defenses and instructed the jury in part as follows:

A. The Defendant denies all the Plaintiff's claims and asserts that the accident was not caused by a defect in the seat assembly of his automobile, if any such defect existed, but was caused by one or more of the following acts of wrongful driving conduct on the part of the Plaintiff:

1. That the Plaintiff failed to keep a proper lookout for the traffic signals and approaching vehicles and that said failure was the proximate cause of the alleged accident and resulting injuries.

2. That the Plaintiff failed to yield the right of way at the intersection to the Mustang driven by Mr. Torrez and that said failure was the proximate cause of the alleged accident and resulting injuries.

3. That the Plaintiff failed to stop in obedience to the traffic signals which were operating at the intersection and that said failure was the proximate cause of the alleged accident and resulting injuries.

4. That the Plaintiff failed to keep his car under proper control as he approached the intersection when he knew there were traffic signals in operation and that said failure was the proximate cause of the alleged accident and resulting injuries.

5. That the Plaintiff failed to exercise ordinary care for his own safety and that said failure was the proximate cause of the alleged accident and resulting injuries.

The instruction concluded in part as follows:

If * * * you find * * * that any one of Defendant's assertions of wrongful driving have been proved, and that such was the proximate cause of the accident, * * * then your verdict should be for the Defendant. [Emphasis added.]

Plaintiff says:

No place is the jury instructed as to what party had the burden of persuasion as to the occurrence or non-occurrence of any one of the five alleged acts of wrongful driving.

I agree.

This instruction directed the jury's attention to the fact that defendant relied upon five acts of wrongful driving as the proximate cause of the accident; that the verdict should be for defendant if "defendant's assertions of wrongful driving have been proved"—by whom, plaintiff or defendant? It did not instruct the jury that the burden of persuasion rested on defendant to prove these facts.

Instruction No. 1 also stated the defense of contributory negligence in the form of assumption of risk as follows:

B. That Defendant further asserts the following affirmative defense:

1. That Plaintiff was contributorily negligent in that Plaintiff discovered any defect of which he complains but nevertheless unreasonably used the product and assumed the risk while he knew of the defect and danger and that such contributory negligence by the Plaintiff was a proximate cause of the alleged accident and resulting injuries.

*The Defendant has the burden of proving the affirmative defense* and that said defense was a proximate cause of the alleged accident and resulting injuries. [Emphasis added.]

Here, the instruction did place the burden of persuasion on the defendant, limited to this particular affirmative defense.

I note that defendant submitted a requested instruction in which wrongful driving was stated as an affirmative defense. The trial court modified the instruction without objection. The modification changed the position of this affirmative defense in the instruction. It was placed in an area where burden of persuasion was omitted. The claim of five acts of wrongful driving was a denial of plaintiff's claim that the defective seat caused plaintiff to lose control of his car. It was a denial that

the defective seat was the proximate cause of the collision. But as a matter of proof, it is an affirmative matter. *Kirkland v. General Motors Corporation,* 521 P.2d 1353 (Okl. 1974). It was an affirmative declaration that plaintiff's wrongful driving was the proximate cause of the accident. This claim falls within the phrase "other matter constituting an . . . affirmative defense" as set forth in Rule 8(c) of the Rules of Civil Procedure [§ 21-1-1(8)(c), N.M.S.A. 1953 (Repl. Vol. 4, 1975 Supp.)].

The burden of persuasion rested on defendant to prove its affirmative defense that plaintiff's wrongful driving was the (sole) proximate cause of the accident. U.J.I. 3.1, 3.6; *Wallace v. Wanek,* 81 N.M. 478, 468 P.2d 879 (Ct.App.1970); *J. A. Silversmith, Inc. v. Marchiondo,* 75 N.M. 290, 404 P.2d 122 (1965).

Regardless of whether wrongful driving was an affirmative defense, the burden of persuasion rested on defendant to prove the claims stated in the defense of wrongful driving.

Rule 51,1(a) of our Rules of Civil Procedure provides that "The court shall instruct the jury regarding the law applicable to the facts in the cause unless such instructions be waived by the parties." Section 21-1-1(51), 1(a) N.M.S.A.1953 (Repl. Vol. 4). This rule is mandatory. It means that fundamental law applicable to the facts shall be given by instructions whether requested or not. *City of Albuquerque v. Ackerman,* 82 N.M. 360, 482 P.2d 63 (1971); *Gerrard v. Harvey & Newman Drilling Company,* 59 N.M. 262, 282 P.2d 1105 (1955).

The law on burden of persuasion is fundamental in character. It is important and indispensable in the administration of justice because it affects a substantial right of the plaintiff. Defendant's burden must be clearly stated so that the burden does not shift to plaintiff. This rule of law should be carefully guarded and rigidly enforced by the court. *King v. Bass,* 273 N.C. 353, 160 S.E.2d 97 (1968); *Hess v. Mumma,* 136 Pa.Super. 58, 7 A.2d 72 (1939); See, *Akers v. Cowan,* 26 Cal.App.2d 694, 80 P.2d 143 (1938).

From a reading of this long, involved instruction, the jury could have believed that plaintiff had the burden of proving that his wrongful driving was *not* a proximate cause of the accident.

Instruction No. 1, as set forth *supra,* was prejudicially erroneous.

D. *Undue emphasis was placed on plaintiff's wrongful driving.*

Instruction No. 1 stated defendant's wrongful driving in negligent context five times. Instructions 6, 7, 8, and 9 emphasized plaintiff's duties in the operation of his vehicle in negligent context. Plaintiff, attacked from every fortress of the defendant, was left defenseless in the minds of the jury. It cloaked the defendant with legal immunity. A trial court should not single out any particular or individual factual aspect of litigation for instructions since there is danger that the jury may unduly attach significance to it. The vice in undue emphasis puts the court in the position of making an argument to the jury. It misleads the jury into thinking that because the court has specifically mentioned certain facts, they are of undue importance or that the court believed them to be true. Instructions should not focus the jury's attention on particular items of evidence that are made unduly prominent and overemphasized.

*Medler v. Henry,* 44 N.M. 275, 288, 101 P.2d 398 (1940) issued a warning with the following quotation:

In 14 R.C.L. p. 780, Sec. 48, it is stated: "It is a dangerous practice to call special attention to an isolated fact and thus, by making it prominent, lead the jury to the opinion that it is of greater significance and weight than other unmentioned facts in the case which may be of no less importance, for the jury will feel bound to regard the fact, thus isolated for their consideration, as the controlling if not the only important fact in the cause which should govern them in making up their verdict. Therefore it is a general rule that an instruction should not single out particular facts and thereby give undue

prominence to them, as such practice tends to mislead the jury."

Repeated references to the jury of the conduct of the plaintiff may well have caused the jury to render its verdict, not on the defect as the proximate cause of the accident, nor as assumption of risk by plaintiff, but upon some conventional contributory negligence of plaintiff in the operation of his vehicle. It also focused the jury's attention on improper driving to the detriment of plaintiff. This is prejudicially erroneous. *Harlan v. Curbo,* 250 Ark. 610, 466 S.W.2d 459 (1971); *Rodriquez v. Lompoc Truck Company,* 227 Cal.App.2d 769, 39 Cal.Rptr. 117 (1964); *Dufour v. Henry J. Kaiser Co.,* 215 Cal.App.2d 26, 29 Cal.Rptr. 871 (1963); *Smith v. Shankman,* 208 Cal. App.2d 177, 25 Cal.Rptr. 195 (1962); *Gerard v. Kenegson,* 151 So.2d 26 (Fla.App.1963); *Clarke v. Hubbell,* 249 Iowa 306, 86 N.W.2d 905 (1957); *Croushorn Equipment Company v. Moore,* 441 S.W.2d 111 (Ky.1969); 75 Am.Jur.2d Trial § 643 (1974); 88 C.J.S. Trial § 340 (1955).

E. *The trial court's conduct of the trial deprived appellant of his "day in court."*

"The tenor of the Judicial Canons of Ethics indicates that a judge may properly intervene in the trial of a case to promote expedition and prevent unnecessary waste of time, or to clear up some obscurity, but he should bear in mind that his undue interference, impatience or participation in the examination of witnesses or a severe attitude on his part toward witnesses or counsel may tend to prevent the proper presentation of the cause, or the ascertainment of the truth therein." *In Re Will of Callaway,* 84 N.M. 125, 128, 500 P.2d 410, 414 (1972).

By way of caution, I point to Rules 105 and 605 of the Rules of Evidence [§§ 20–4–105, 605, N.M.S.A.1953 (Repl. Vol. 4, 1975 Supp.)].

Rule 105 reads:

The judge shall not comment to the jury upon the evidence or the credibility of the witnesses.

Rule 605 reads:

The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point.

Plaintiff's last witness, to conclude his case in chief, was William Ernest Baker, a Professor of Mechanical Engineering at the University of New Mexico, who had received a doctorate in Engineering Mechanics. Plaintiff presented Exhibit No. 7 to the witness, a segment of the floor pan from a Volkswagen Beetle with the lower frame of the seat on the seat tracks. *This was an exhibit of defendant in the previous trial. It was a seat from a Volkswagen automobile.* The witness was asked to examine it carefully, take the carriage apart and look it over. A harangue began before the jury—plaintiff questioning, defendant objecting and making argument thereon, and the court directing the procedure. The court questioned the witness and then commented:

If this is not the seat runner, and this witness says so, manufactured by the Volkswagen Corporation, *then it has no place in this lawsuit.*

\* \* \* \* \* \*

Whether they were furnished to you by the defendant or not, *this witness says it is not the seat manufactured by Volkswagen,* and whether furnished by the defendant or not, *then it is not admissible in evidence as a design made by the defendant,* Volkswagen Corporation, *no matter where it came from.*

MR. CHAVEZ: May we have a recess until 8:00 o'clock in the morning?

THE COURT: No, we still have some time.

MR. CHAVEZ: If the Court please, I don't wish to argue, but *I don't think the witness testified that this was not a seat manufactured or furnished by Volkswagen.* \* \* \* [Emphasis added]

The arguments continued thereafter in the presence of the jury until the court concluded:

The first thing, we're going to have to recess now, because the Court intended to go to 5:30, *and we have wasted just about*

an hour and fifteen minutes this afternoon. *The Court is not going to put up with that tomorrow.* If you are not ready to explain the alterations made, this exhibit is not going to be admitted in evidence. *The Court has already ruled on that, and the Court is not about to change his mind. We cannot use an exhibit that is an authentic exhibit,* and any alteration without proper explanation is not authentic, *unless you can show that the defendant authorized the alterations to comply with some design of theirs that* existed in the automobile that was involved in this accident.

\* \* \* The Court will want to see counsel here at 8:00 o'clock tomorrow morning, in chambers, and be ready at that time to give the Court a full explanation of the alteration of the exhibit.

The Court will now recess. Ladies and gentlemen, it was the Court's intention to take testimony until 5:30 today, hoping that we could conclude this case this week. We have a holiday coming on Monday, and the Court did not want that to interrupt this trial. The Court still thinks we can finish it this week, *but we have wasted some time here,* and the Court wishes to apologize to the jury for the loss of this time. *Ordinarily counsel are prepared with their exhibits, and this is a most unusual case, where a witness comes in and testifies that he has altered an exhibit. This is unusual, it is improper, to say the least.* \* \* \* [Emphasis added]

The next day, the court continued to pursue plaintiff's attorney and the plaintiff's case until the following occurred:

MR. CHAVEZ: We are going to further object. This is highly prejudicial to the plaintiff's case.

THE COURT: *All evidence introduced on the other side is prejudicial to the other side.*

MR. CHAVEZ: *For the record, if Your Honor please, the court's comments are being prejudicial to my client.*

THE COURT: *Yes. You may sit down,* and you may proceed to prove the

foundation of the film. [Emphasis added]

Other colloquy and comments continued thereafter in the presence of the jury. In passing, we point only to the following:

THE COURT: * * * *The Court has instructed the jury not to take into consideration anything you say,* just what he says:

* * * * * *

THE COURT: You are going to have to talk louder than that, *if you are talking down to the floor.* I think you do better if you stay behind the lectern. [Emphasis added]

During the trial of stubbornly contested cases, the patience of judges and opposing attorney are heavily strained, especially when the same case is tried a second time. Judges are human beings. "Just because the holders of judicial office are identified with the interests of justice they may forget their common human frailties and fallibilities." *Bridges v. California,* 314 U.S. 252, 289, 62 S.Ct. 190, 86 L.Ed. 192, 206 (1941) (Justice Frankfurter, dissenting). Arguments that arise during the examination and cross-examination of witnesses can arouse the emotions of a judge. However, we suggest that the better elements of one's nature should control the proceedings.

The reproof of attorneys and adverse comments of a party's case, if necessary during trial, should be made in the absence of the jury. The average juror looks with profound respect to the presiding judge and the juror's opinion can be affected by the unfavorable attitude of the judge toward one of the attorneys during the trial of a case. In most cases, the jury "tries" the lawyer rather than the client. The lawyer gradually absorbs the client's cause to such an extent that unconsciously in the minds of the jury it becomes the lawyer's cause. Neither a cautionary instruction nor any other action by the trial court can cure the error. To do so may do more harm than good. It may emphasize the jury's awareness of the lawyer's conduct.

A presiding judge should conduct a trial in a fair and impartial manner and refrain from making unnecessary comments during the course of trial which may tend toward a prejudicial result to a litigant. *Etzel v. Rosenbloom,* 83 Cal.App.2d 758, 189 P.2d 848 (1948); *City of Miami v. Williams,* 40 So.2d 205 (Fla.1949). To this end, it is wise to caution the jury that the judge's comments are not binding and the jury should not be guided by them. *Williams v. Philadelphia Transportation Company,* 415 Pa. 370, 203 A.2d 665 (1964).

I quote with approval from *Turner v. Modern Beauty Supply Co.,* 152 Fla. 3, 10 So.2d 488, 492 (1942), the admonition that should prevail in every jury trial:

* * * [A] suitor, as a matter of law, is entitled to have his cause considered with the cold neutrality of an impartial judge and an unbiased or an unprejudiced jury correctly and adequately instructed by the trial court upon all the law applicable to the controversy. Likewise this neutrality and impartiality of the court and jury under our judicial system, like the sword of Damocles, should remain suspended over each participant therein and be extended to each incident of the trial and proceedings from the impaneling and swearing of the jury until the entry of the order by the trial court on the motion for a new trial to the end that the law and right only shall prevail in our temples of justice.

Although I read from a cold record, I believe that the remarks and comments of the district judge were harmful to the plaintiff. *In Re Will of Callaway, supra; Ginnis v. Mapes Hotel Corporation,* 86 Nev. 408, 470 P.2d 135 (1970), 42 A.L.R.3d 769 (1972); *Lee v. Artis,* 205 Va. 343, 136 S.E.2d 868 (1964).

I do not question the learning, integrity, impartiality, long experience and good judgment of the district judge. However, this complicated case has twice been tried with him presiding, and perhaps this fact may have affected his conduct. The American Bar Association, Standards of Judicial Administration, stated, in § 3.36(c), p. 60,

Directions Upon Remand of Standards Relating to Appellate Courts:

> The court may in appropriate circumstances order that a retrial be assigned to a different trial judge.

This matter is one of first impression and one of public interest.

In *King v. Superior Court In & For County of Maricopa,* 108 Ariz. 492, 502 P.2d 529, 530 (1972), 60 A.L.R.3d 172 (1974), the Supreme Court amended its rule on change of judge which reads as follows:

> When an action is remanded by an appellate court and the opinion or order requires a new trial on one or more issues, then all rights to change of judge are renewed and no event connected with the first trial shall constitute a waiver.

The Court said:

> In the case of an appeal, reversal and a remand for a new trial, it is always possible that the trial judge may subconsciously resent the lawyer or defendant who got the judgment reversed. The mere possibility of such a thought in the back of a trial judge's mind means that a new judge should be found.

The amended rule appears to be an innovation in the rules for change of judge in order for a party on reversal to seek a fair and impartial trial the second time around. See, *People v. Winters,* 171 Cal.App.2d Supp. 876, 342 P.2d 538 (1959); *City of Columbus v. Molt,* 34 Ohio App.2d 146, 296 N.E.2d 564 (1973); *United States v. Crovedi,* 467 F.2d 1032 (7th Cir. 1972); *People v. Jackson,* 391 Mich. 323, 217 N.W.2d 22 (1974); Disqualification of Original Trial Judge to Sit on Retrial After Reversal or Mistrial, 60 A.L.R.3d 176 (1974).

Upon a second trial of a case, the trial judge should be subject to formal disqualification at the instance of the losing party.

F. *Cross-examination of expert witness on compensation rests in discretion of the court.*

Derwin Severy, a research engineer dealing with automotive, track engineering problems, testified for defendant as an expert witness. On cross-examination, the following occurred:

> Q. Let me ask you, Mr. Severy, for how many years have you performed services like this for Volkswagen?
>
> A. Since 1971 is the first time, sir.
>
> Q. All right. And your compensation for the services in this case amount to how much?
>
> A. The same as I charge before, ninety-five dollars an hour.
>
> Q. Ninety-five dollars an hour? Let's take 1974 for service like that. Your compensation would have been from Volkswagen, about a hundred and eighty thousand dollars?
>
> MR. KLECAN: Your Honor, I don't think that is material, what he got from Volkswagen in 1974.
>
> THE COURT: Objection sustained.
>
> MR. CHAVEZ: Well, we would like to tender the compensation from Volkswagen to this witness, '73, '74, and '72, '75, so the jury can evaluate bias or absence of bias.
>
> MR. KLECAN: Objection.
>
> THE COURT: You have made the tender and the Court is refusing. You made the tender. The Court is rejecting the evidence.

An expert witness may be cross-examined as to payment for testifying as an expert. *State v. Clarkson,* 58 N.M. 56, 265 P.2d 670 (1954). "The amount of an expert's fees, whether stipulated in advance of a trial or determinable in the future, has a direct and vital bearing upon his credibility, his interest, bias, or partisanship, and the rule * * * should be liberally applied." *Reed v. Philadelphia Transp. Co.,* 171 Pa.Super. 60, 90 A.2d 371, 373 (1952), 33 A.L.R.2d 1166, 1169 (1954); 31 Am.Jur.2d Expert and Opinion Evidence, § 50 (1967). However, "the scope and extent of the cross-examination rests in the sound discretion of the trial court." *Mezzanotte Construction Company v. Gibons,* 219 Md. 178, 148 A.2d 399, 401 (1959); *Hostert v. Iowa State Highway Commission,* 250 Iowa 253,

93 N.W.2d 773 (1958); *State v. Howington,* 268 Ala. 574, 109 So.2d 676 (1959).

Plaintiff was allowed to show that the expert witness received $95.00 per hour for services rendered in this case. This was sufficient to apprise the jury of the interest, bias or partisanship of the witness.

The important question is: Did the trial court abuse its discretion in disallowing proof of payment for services rendered defendant for four years prior to 1976? The answer is "No." It is prejudicial error to allow in evidence the amount of compensation paid for general services to defendant. *Zamsky v. Public Parking Authority of Pittsburgh,* 378 Pa. 38, 105 A.2d 335 (1954).

If plaintiff wanted to determine the amount of compensation paid to the expert witness for services rendered in this case, he had a duty to question the witness of the number of hours spent on behalf of defendant. The jury was not impressed with plaintiff waving before them the sum of $180,000.00 as compensation for services rendered defendant. The trial court properly rejected the tender of this evidence.